James **WELLS**, individually and as next friend for Jewel Wells, Edith Wells, Tony Wells and Elaine Wells, minors, Plaintiffs-Respondents,

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**, a corporation, Defendant-Respondent,

**Preferred Risk Mutual Insurance Company,** a corporation, Defendant-Appellant,

**Lester Riley, Defendant-Respondent.**

No. 55091.

Supreme Court of Missouri, En Banc.

Oct. 12, 1970.

As Modified on Court's Own Motion Nov. 9, 1970.

Jack H. Ross, Coleman, Ross & Cekovsky, Clayton, for plaintiffs-respondents.

Donald L. James, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendant-appellant.

ROBERT E. HOGAN, Special Judge.

■ Plaintiff James Wells and his four minor children were injured in a collision between Wells' automobile and a truck being driven by defendant Lester Riley. Plaintiffs brought suit for personal injuries against defendant Riley and obtained a judgment in the sum of $2,000 in favor of plaintiff James Wells, and judgments in favor of each of the minor plaintiffs in the sum of $750. Subsequently, plaintiffs brought this action for a declaratory judgment, seeking to establish either: (1) that defendant Hartford was liable under the omnibus clause of its automobile liability policy covering the vehicle being driven by defendant Riley, or (2) that defendant Preferred Risk was liable under the uninsured motorist provisions of its automobile liability policy issued to plaintiff James Wells. A trial to the court resulted in a

finding that defendant Preferred Risk was liable on its policy. Preferred Risk appealed to the St. Louis Court of Appeals, which affirmed the judgment. On application of defendant Preferred Risk, the appeal was ordered transferred here after opinion pursuant to the provisions of Mo. Const. Art. V, Section 10, V.A.M.S., and Rule 84.05, V.A.M.R. We are therefore required to decide the case as an original appeal, whatever the underlying reason for transfer, Fizette v. Phillips, 357 Mo. 947, 951–952, 211 S.W.2d 728, 730–731 [1] [2], and even though we may agree with the Court of Appeals, Beetschen v. Shell Pipe Line Corporation, 363 Mo. 751, 755, 253 S.W.2d 785–786 [1], as we do in this case.

As material here, the facts are that the plaintiffs were involved, and presumably injured, in an automobile accident which took place in the City of St. Louis on September 13, 1964. Plaintiff James Wells was driving his own car, and his children were riding with him. Defendant Riley was driving a truck which belonged to his employer, a concern known as Arthur Enterprises, Inc. Mr. Wells filed suit to recover damages for his injuries and those of his children, originally against Arthur Enterprises; later, an amended petition was filed joining Mr. Riley as an additional defendant.

The original action was filed, apparently, on October 6, 1964. On November 30, 1965, plaintiff James Wells and his wife executed a document styled "Contract to Limit Recovery on Judgment to Specified Insurance Contract." Obviously intended to bring plaintiffs and defendant Riley within the operation of Section 537.065, RSMo (1969), V.A.M.S., the contract recites that plaintiff Wells and his wife, "on behalf of themselves and their minor children * * * and in consideration of the sum of $1.00 and other valuable consideration paid to them by the defendant Lester Riley * * * do * * * agree that in the event of a judgment against Lester Riley in this cause of action neither they nor any person, firm or corporation claiming by or through them will levy execution,

by garnishment or as otherwise provided by law, except against any insurer providing liability coverage or uninsured motorist coverage on either of the vehicles involved or the operators or persons therein * * *." It further recites that Wells and his wife agree to indemnify Riley in case of "action or cause of action" against him on behalf of the children. This contract is signed and sworn to by Wells and his wife.

On May 10, 1965, defendant Riley was made a party to the suit. On June 22, 1965, counsel for the plaintiffs sent a long letter to defendant Hartford's office in St. Louis, summarizing the plaintiffs' position with respect to the pending litigation. The letter recites the court in which the litigation is pending, the names of the parties, and the number assigned to the case. In general, the letter goes on to state counsel's understanding that Hartford's position was that its policy did not cover Riley at the time of the accident, and that Hartford had indicated it did not intend to appear. Counsel gave it as his view that Riley's employer was not liable, but asserted that he did believe Mr. Wells " * * * [has] a cause of action against Lester Riley individually and we * * * advise you and all other parties to whom this letter is directed, that it is our intention to pursue that cause of action * * * to judgment." Mr. Ross went on to state his further view that if Hartford's policy was not applicable, then it would appear that Preferred Risk's was, and gave notice that a claim would be made on Preferred Risk if Hartford's policy did not cover Mr. Riley at the time of the accident. Counsel stated in his letter that he was enclosing copies of both parties' pleadings, and further offered " * * * to furnish [Preferred Risk] copies of any other documents arising out of or in connection with this litigation which they may request." Preferred Risk was asked to acknowledge receipt of the letter. It was stipulated at the trial of this case that Preferred Risk had received a copy of the letter.

On February 3, 1966, plaintiffs' counsel gave notice to both Hartford and Preferred Risk that he intended to "request judgment" against defendant Riley only on February 23. Again it was stipulated that Preferred Risk received a copy of this letter. On February 23, 1966, plaintiffs reduced their claim against Mr. Riley to judgment. The trial court found—in this case—that the judgment was not a default judgment but that plaintiffs' action against Mr. Riley was "handled as a jury waived case." The trial court found further that both parties appeared (at the earlier trial) and both were represented by counsel. Parts of the record and files from the earlier case were offered and received in evidence. The trial court was at liberty to consult its own files to determine what happened in the first case, Arata v. Monsanto Chemical Company, Mo., 351 S.W.2d 717, 721 [5], and we think we must accept the finding that plaintiffs' judgment against Mr. Riley was not taken by default, but was entered after a contest. The record is wholly devoid of any indication that Preferred Risk sought to participate in this trial in any capacity, though it had had about six months' notice that counsel intended to proceed to judgment and that its interest might well be involved. We cannot say what investigation, if any, Preferred Risk undertook to make, but again the record is devoid of any indication that it communicated with plaintiffs or their counsel, or indicated its position in any way prior to the trial of the declaratory judgment action.

The declaratory judgment action—the case now under review—was filed some time after the judgment had been taken in the tort case. We need not set out the content of the pleadings in this second suit at length; in substance, the plaintiffs pleaded the occurrence of the accident, the existence and, very briefly, the pertinent substance of the two insurance policies, the recovery of a judgment against Riley, and, in somewhat conclusory fashion, that one of the two insurers was liable over on the judgment. Hartford responded by admit-

ting issuance of an insurance policy to the owner of Mr. Riley's truck, and by denying that Riley was an omnibus insured. Preferred Risk admitted the existence of its policy but denied that Riley was an uninsured motorist, and further pleaded that plaintiffs had forfeited their uninsured motorist coverage by entering into a settlement with Riley in violation of the policy terms. In summary, the issues tendered, and the issues actually tried in the declaratory judgment action, were: (a) whether or not Riley was using the truck "with permission" of his employer, thus making him an omnibus insured under Hartford's policy; and (b) whether or not Preferred Risk was liable on its uninsured motorist coverage if Hartford's policy did not apply, in view of the document the plaintiffs had executed before their tort claim was litigated.

On the first of these issues, plaintiffs called defendant Riley as a witness. He testified that at the time of the accident he worked for a concern known as Arthur Enterprises, which operated motion picture theaters in the St. Louis area. Mr. Riley's duties were to " * * * work in the parking lots, and deliver stuff." Sometimes, but not always, Mr. Riley used a company truck in the performance of his job. At the time the accident occurred, Mr. Riley was driving a dump truck which he and " * * * about four or five others" used in their work. Riley occasionally used the truck for personal business, but it was kept at a parking lot near the Fox Theater, and ordinarily when Mr. Riley finished his work he left the truck there. The keys to the truck, and presumably to other vehicles, were left at a commercial filling station near or on the parking lot, and when the station was open Riley took the key to the truck when he needed it. However, if the station was locked Mr. Riley could not have got it, because "at that time I didn't have no key to the station." It was shown that on occasion, when the weather was inclement, Mr. Riley was allowed to take the truck home, "so I could get back to work and get the lots cleaned." Mr. Riley did not regularly keep the key to the truck with him; he stated positively that "[t]he only time I would have the key [was] when I asked for the truck and he [his superior] would let me have it." Riley " * * * didn't just regular keep the key." Mr. Riley further testified, in substance, that he had been given permission to use the truck for personal business, but he had also been refused permission several times, and he had been told specifically that " * * * I couldn't use it for running around on the street, to use it as a pleasure car or something."

The accident in question occurred on Sunday morning, about 9:30 A.M. Mr. Riley was "coming from home, going to pick up a ladder around Cote Brilliant (sic)." Mr. Riley had used the ladder, which belonged to his employer, to help a fellow employee paint his house. The substance of Mr. Riley's testimony was that he had taken the ladder without permission of anyone in authority, and he had not asked permission to take the truck, because when he left with the truck on Saturday morning, "[t]here was no one there for me to ask." Riley also said that he had an automobile of his own at the time, but had no insurance on it, and he testified without objection that "they taken my [driver's] license," because he was unable to comply with the requirements of the Safety Responsibility Law, Chapter 303, RSMo (1969). Defendant Hartford also produced witnesses on the issue of Riley's permission to use the truck; in substance, their evidence was that Riley did not have continuous permission to use the vehicle for personal purposes, and that he had not obtained express permission to use it on the day he took it, Saturday before the accident on Sunday.

As. for the other litigated issue—Preferred Risk's liability if Hartford's policy did not apply—the court received a copy of Preferred Risk's policy in evidence, the contract signed by Mr. Wells and his wife was received, and Mr. Wells testified that he had signed it. Mr. Wells was then

asked: "Q. Did you receive a dollar or any other money or anything to your knowledge in return for signing this document?" He answered, without objection, "I did not." Further testimony on Mr. Wells' part tended to show that he understood the nature of the contract when he signed it. It was stipulated, as we have said, that Preferred Risk received copies of the correspondence addressed to Hartford, and the trial court's files and record in connection with the tort case were offered. The trial court refused the offer of the entire file, but suggested that if counsel would indicate the parts of the record of which he wanted notice taken, notice would be taken directly from the file. This was done. Generally, this is the factual background of the appeal, and upon this evidence the trial court filed a memorandum opinion holding in substance that Hartford was not liable but Preferred Risk was.

On appeal, both in the St. Louis Court of Appeals and here, Preferred Risk has briefed and argued three points. Hartford's policy was admittedly in force and admittedly covered the vehicle which Mr. Riley was driving at the time of the accident. Part III of the "Insuring Agreements" of that policy contains a so-called omnibus provision which, as material on this appeal, reads: " * * * The unqualified word 'insured' includes * * * (2) under coverages A [the bodily injury coverage] and C, any person while using an owned automobile * * * provided the actual use of the automobile is by the named insured or with his permission * * *." The appellant's first point is that the trial court erred in finding that Riley was uninsured because the evidence clearly proved that he had implied permission to use the truck and he was therefore an insured under the omnibus clause of Hartford's policy, quoted above.

This point need not detain us long. Our courts have, of course, recognized that permission to use a vehicle within the meaning of the omnibus clause may be either express or implied, Hartford Accident and Indemnity Company v. List, Mo.App., 424 S.W.2d 761, 767; Hanover Insurance Company v. Abchal, Mo.App., 375 S.W.2d 605, 608[1]; Varble v. Stanley, Mo.App., 306 S.W.2d 662, 666[4], but in applying the law to specific situations, they have also come finally to the conclusion that the existence of implied permission to use a vehicle must be determined primarily as a factual matter in each case. Bourne v. Manley, Mo.App., 435 S.W.2d 420, 429[12]. The cases cited by the appellant are clearly distinguishable upon their facts. Mr. Riley did not have continuous unrestricted use and control over the vehicle involved here, as was the case in Mazdra v. Selective Insurance Co., Mo., 398 S.W.2d 841, and Bourne v. Manley, supra, 435 S.W.2d 420. He testified that he ordinarily used the same truck in performing his duties, but several other employees also used it. In the course of his work, Mr. Riley usually obtained the key to the truck, took the truck off the parking lot, performed his duties, and returned the truck to the parking lot at the end of his working day. He testified that he had been told by his employer that he " * * * couldn't use [the truck] for running around on the street [or] use it as a pleasure car or something." The evidence clearly permits the inference that while Mr. Riley was from time to time allowed to take the truck for personal purposes, he obtained the truck by express consent of his employer, renewed and refreshed on each occasion. When Mr. Riley finished his work, he returned the truck to the parking lot. In the circumstances presented, we believe that each retaking and additional use of the truck must be considered as a new use for which a new consent was required, and since Mr. Riley did not have permission to use the truck when the accident occurred, he cannot be considered an additional insured under the omnibus clause of Hartford's policy. Continental Casualty Company v. Padgett, 4 Cir., 219 F.2d 133, 135; Anno., 5 A.L.R.2d 600, Section 23,

pp. 660–661 (1949); 7 Am.Jur.2d Automobile Insurance, Section 124, pp. 443–444.

Preferred Risk also vigorously argues that since it was neither Mr. Riley's insurer nor his indemnitor, the notification that an action was pending between plaintiffs and Mr. Riley could not serve to bind it to the outcome of that action, and therefore the trial court erred in holding it bound by the judgment therein entered. Plaintiffs answer by saying that Preferred Risk, having been given notice of the pendency of the action, and having been afforded an opportunity to appear and participate in the proceedings, is now bound by the judgment entered in that action.

■■■ We agree with the plaintiffs. Applying the principles of collateral estoppel, a number of courts, including one of our own, have held that an uninsured motorist carrier is estopped to relitigate the issues necessarily decided in an action brought by its insured against an uninsured motorist, if the uninsured motorist carrier has been given full and adequate notice and an opportunity to intervene and defend when the insured litigates the issues of liability and damages with the uninsured motorist tort-feasor. State ex rel. State Farm Mutual Automobile Insurance Company v. Craig, Mo.App., 364 S.W.2d 343, 347[7]; Andeen v. Country Mutual Insurance Company, 70 Ill.App.2d 357, 217 N.E.2d 814, 817[2]; Dominici v. State Farm Mutual Automobile Ins. Co., 143 Mont. 406, 390 P.2d 806, 810[2]; Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606, 611–612[5] [6]; Allstate Insurance Company v. Pietrosh, Nev., 454 P.2d 106, 110–111[5] [6]; Boughton v. Farmers Insurance Exchange, Okl., 354 P.2d 1085, 1090–1091[5] [6], 79 A.L.R.2d 1245. We consider these rulings sound. They represent an extension and specific application of the general principle, which has been variously stated, that when one is bound to protect another from liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the litigation, and an *opportunity*

to control the proceedings. City of St. Joseph v. Union Ry. Co., 116 Mo. 636, 643, 22 S.W. 794, 795; Listerman v. Day and Night Plumbing & Heating Serv., Mo.App., 384 S.W.2d 111, 119, and cases cited marginally note 5; 1 Freeman, Judgments, Section 447, p. 978 (5th ed. 1925). This general principle is subject to a good many qualifications; the person liable over—the indemnitor—is not bound by a judgment obtained by fraud or collusion, and the estoppel of the judgment does not preclude the indemnitor from asserting that the obligation or relation which gives the indemnitee a remedy over does not exist. City of St. Joseph v. Union Ry. Co., supra, 116 Mo. at 643, 22 S.W. at 795; 46 Am. Jur.2d Judgments, Section 561, p. 723. Nevertheless, the general principle within its limitations is a rule of general application, without regard to the nature of the liability over. 50 C.J.S. Judgments § 811, p. 362. It is true in this case that Preferred Risk was not in contractual privity with Mr. Riley, but we do not consider the judgment entered in the first action the less binding upon it simply because its position was not perfectly analogous to that of an indemnitor who could literally be vouched in to defend the action. Allstate Insurance Company v. Pietrosh, supra, 454 P.2d at 111[6], and see Matthews v. Allstate Insurance Company, D.C.Va., 194 F.Supp. 459, 467[16].

■■ Even though Mr. Riley was not in default in the first action, Preferred Risk had the right to intervene upon application timely made, at least for the purpose of assuring itself that the issues of liability and damages were fully litigated, and for the purpose of assuring itself that the estoppel of the judgment would be mutual if there was a finding for the defendant. State ex rel. State Farm Mutual Automobile Insurance Company v. Craig, supra, 364 S.W.2d at 347–348[8]; State Farm Mutual Automobile Ins. Co. v. Glover, 113 Ga.App. 815, 149 S.E.2d 852, 856[1–6]; Wert v. Burke, 47 Ill.App.2d 453, 197 N.E. 2d 717, 719–720[1, 2]; Heisner v. Jones,

supra, 184 Neb. 602, 169 N.W.2d at 611–612 [6]. In our view, this right to intervene gave Preferred Risk a right of control over the first action sufficient to enable it to protect its own interest, had it chosen to do so. Preferred Risk does not maintain, as a matter of fact, that it did not have that right, nor does it claim that the notice it received was inadequate or misleading, as was the case in Kollmeyer v. Willis, Mo.App., 408 S.W.2d 370, 27 A.L.R.3d 332. We therefore conclude that Preferred Risk was properly held estopped to relitigate the issues of liability and damages in this action. Matthews v. Allstate Insurance Company, supra, 194 F.Supp. at 465–466 [13].

■ Preferred Risk further suggests that plaintiffs should have been required to prove Mr. Riley's negligence, their damages, and Mr. Riley's uninsured status in a single action. Joinder of the uninsured motorist with the uninsured motorist carrier in a single action is not permissible under the present joinder statute, State ex rel. Campbell v. James, Mo., 263 S.W.2d 402; State ex rel. Cozean v. Meyer, Mo. App., 449 S.W.2d 377, and Preferred Risk advances no convincing reason why such joinder should be permitted, let alone required. Actually, the point is so abstractly made that we need not rule on it, nor discuss it further.

Finally, Preferred Risk contends that whether or not Mr. Riley is an uninsured motorist, plaintiffs are excluded from coverage because plaintiff James Wells entered into a contract in violation of the terms of his policy. In support of this argument, Preferred Risk calls attention to that part of its policy which excludes the uninsured motorist coverage if the " * * * insured, his legal representative or any person entitled to payment under this part shall, without written consent of the company, make any settlement with * * * any person or organization who may be legally liable," and cites Kisling v. MFA Mutual Ins. Co., Mo.App., 399 S.W.2d 245, which holds that this exclusionary provi-

sion is valid and enforceable, so long as the insurer's consent is not unreasonably or arbitrarily withheld. Alternatively, in the supplementary brief filed here, Preferred Risk argues that the contract excludes the plaintiffs from coverage because it extinguishes Preferred Risk's right of subrogation. The plaintiffs answer this by saying that the only purpose of the quoted exclusionary provision is to protect the subrogation rights of the insurer, and since there can be no subrogation to an unliquidated claim for bodily injury, see Forsthove Bros. v. Hardware Dealers Mutual Fire Insurance Co., Mo.App., 416 S.W. 2d 208, no valid rights have been extinguished. Further, plaintiffs argue, the contract was not really a compromise settlement, but only a contract to limit recovery to a specified insurance contract as authorized by Section 537.065, and in any event the evidence shows that the contract is unenforceable for want of consideration.

■ For the purposes of this opinion, we need not sort out, consider and rule on all these various contentions, for in any event we have concluded that, on the record presented, no consideration was given for the Wells' promise to forbear enforcement of any judgment rendered against Mr. Riley's assets, and the contract was unenforceable. It has been stated over and over again that consideration sufficient to support a simple contract may consist of a detriment to the promisee or a benefit to the promisor, and it is sufficient if either exists. Thompson v. McCune, 333 Mo. 758, 765, 63 S.W.2d 41, 43–44[4]; Starr v. Crenshaw, 279 Mo. 344, 353–354, 213 S.W. 811, 814[2]. We are unable to find either here. The promisors, Mr. and Mrs. Wells, promise to forego any attempt to satisfy any judgment they may obtain from Mr. Riley's assets; certainly no benefit accrues to them by reason of this promise. They promise this forebearance in consideration of the payment of one dollar "and other valuable consideration paid to them." The detriment to the promisees may consist of the promisee's doing anything legal he is not bound to do, or his refrain-

ing from doing anything he has a right to do, 17 C.J.S. Contracts, § 74 p. 757, but payment in this case was recited as a fact and not as a promise, no effort was made to show that some consideration other than that recited was given, and it was competent for the plaintiffs to show, as they did, that the payment recited was never made. McDaniel v. United Rys. Co. of St. Louis, 165 Mo.App. 678, 691–694, 148 S.W. 464, 466–467[4] [5]; 1 Williston, Contracts, Section 115B, pp. 401–403 (Rev. ed. 1936); Restatement, Contracts, Section 82, p. 93, and Illustration 1, p. 94 (1932). We therefore hold that the contract was unenforceable for want of consideration, and no bar to plaintiffs' coverage under Preferred Risk's policy.

For the reasons indicated, the judgment is affirmed.

HENLEY, C. J., and FINCH, DONNELLY, MORGAN, and HOLMAN, JJ., concur.

SEILER, J., dubitante.

BARDGETT, J., not participating because not a member of the Court when cause was submitted.