**SAFECO INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**Dale STELLER et al., Defendants.**

**No. 72 C 196(A).**

United States District Court,
E. D. Missouri, E. D.

Dec. 1, 1972.

Henry D. Menghini, Evans & Dixon, St. Louis, Mo., for plaintiff.

Leroy Crouther, Jr., St. Louis, Mo., for defendant Linda Sue Steller.

James E. Godfrey, Heneghan, Roberts & Godfrey, St. Louis, Mo., for defendant MFA Mutual Ins. Co.

Robertson, Ely & Wieland, St. Louis, Mo., for defendant Universal Underwriters Ins. Co.

## MEMORANDUM OPINION

HARPER, District Judge.

Plaintiff, Safeco Insurance Company of America (hereinafter referred to as Safeco), a corporation incorporated and having its principal place of business in the State of Washington, brought suit seeking a declaratory judgment to determine the rights and liabilities of the defendant insurance companies to the suit under the terms of various policies of insurance. The defendants named in the complaint are Dale Steller, Linda Sue Steller, Universal Underwriters Insurance Company (hereinafter referred to as Universal), and MFA Mutual Insurance Company (hereinafter referred to as MFA). Both of the defendant insurance companies are incorporated and have their principal place of business in the State of Missouri. The amount in controversy exceeds $10,000.-00 and this Court has jurisdiction under 28 U.S.C. § 1332.

Linda Sue Steller, a minor, alleges in a suit filed by Gene Steller, her next friend, in the Circuit Court of St. Charles County, Missouri, that, on or about May 9, 1970, she was riding in the back of a truck owned by Dale Steller, was caused to fall out of the truck, and was run over by a trailer being towed by the truck, due to the negligence of Dale Steller, causing her serious and permanent injuries. The amount of the prayer in her lawsuit is $25,000.00. Dale Steller testified that he called upon Safeco, Universal and MFA to defend him in the above action.

At the time of Linda Sue Steller's alleged injury, Dale Steller was operating a pickup truck owned by his employer, Boemler Chevrolet Company of Arnold, Missouri. The pickup truck was insured under a garage liability policy issued by Universal. Attached to the pickup truck was a horse trailer owned by Gene Whitener. Whitener had loaned the horse trailer to Dale Steller, and Dale Steller was using the horse trailer with Whitener's permission at the time of the accident. Whitener carried a policy of insurance issued by MFA. At the time of the accident, Dale Steller owned a private passenger automobile which was insured under a policy issued by Safeco. In its complaint, Safeco alleges that at the time of the accident Dale Steller was driving the pickup truck with the permission of Boemler Chevrolet Company, that the policy of insurance issued by Universal to Boemler Chevrolet Company covers any liability of Dale Steller on account of the accident, and that by the terms of its policy Universal is required to defend Dale Steller in the suit brought against him in the Circuit Court of St. Charles County, Missouri. The complaint also alleges that the policy of insurance issued by MFA to Whitener covers any liability of Dale Steller on account of the accident, and that by the terms of its policy MFA is required to defend Dale Steller in the suit brought against him in the Circuit Court of St. Charles County, Missouri. Safeco prays that this Court enter a declaratory judgment that the policies of Universal and MFA cover Dale Steller in the matter of the accident, that Universal and MFA are required to provide Dale Steller with a defense to the lawsuit against him by Linda Sue Steller, and that Safeco's policy of insurance be excess over the collectable insurance afforded by the policies of Universal and MFA.

Dale Steller has been the parts manager for Boemler Chevrolet Company since 1966. Several years prior to the date of the accident Dale Steller was furnished a pickup truck by the company through Floyd Boemler, the owner, to be used to pick up and deliver parts. Floyd Boemler testified that he did not recall giving Dale Steller any specific instructions when he initially gave Steller the truck. Dale Steller drove the truck to and from work, a distance of about three miles, and used the truck to go home for lunch in addition to using the

truck for business purposes. Dale Steller had also used the truck to take his children to school, to grocery shop, on one occasion to haul some hay, and on another occasion to haul logs. Boemler testified he had seen Dale Steller dropping his children off at school and had seen the truck parked at the grocery store. Boemler had never voiced any objection to Dale Steller using the truck for taking the children to school or getting groceries. The only thing he had ever said to Dale Steller about the use of the truck was that he objected to the truck being used to haul hay and logs since he did not want the truck damaged or unsightly.

Prior to May 9, 1970, Dale Steller had negotiated the sale of one of his horses and had been asked by the purchaser to take the horse to a stable in O'Fallon, Missouri, approximately twenty-five miles from Dale Steller's home. Dale Steller arranged to borrow a horse trailer from Gene Whitener. He drove the truck to Whitener's residence to pick up the horse trailer. There he inserted a ball joint into a hole in the rear bumper of the truck and attached the horse trailer. He drove back to his home and put the horse ·in the trailer. He then drove to the stable in O'Fallon, Missouri, accompanied by his son and his niece, Linda Sue Steller. After unloading the horse at the stable, Dale Steller, his son and his niece, left and the accident occurred.

Subsequent to the accident Dale Steller signed several statements. Portions of these statements are in direct conflict, one (Exhibit A) stating, "At the outset of Mr. Boemler letting me use the truck, he specifically instructed me not to use the truck for my personal business but only on business of Boemler Chevrolet Company," and another (Exhibit 2) stating, "Mr. Boemler did not, at any time, place any restrictions on my use of the pickup for personal reasons." At the trial, Dale Steller testified that Floyd Boemler had not specifically instructed him not to use the truck for personal business, but that he under-

stood that the truck was only for company business and was not for personal use. Dale Steller repeated that this was his understanding several times during his testimony, and the Court finds this to be the credible testimony. Although Dale Steller had used the truck previously to take his children to school and to go to the grocery store, he testified that he had never told Floyd Boemler of these uses.

Universal's policy with Boemler Chevrolet Company states in part:

"**V** *Persons Insured*

"(3) with respect to the automobile hazard:

"(a) any partner, or paid employee or director or stockholder thereof or a member of the household of the named insured or such partner or paid employee or director or stockholder while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *"

The substantive law of Missouri is controlling in this action. Under Universal's policy Dale Steller is covered only if he were driving the truck at the time of the accident with the permission of Floyd Boemler. Permission may be either express or implied.

As stated in Bourne v. Manley, 435 S. W.2d 420, 426–427 (Mo.App.1968): "To be express, permission 'must be of an affirmative character, directly and distinctly stated, clear and outspoken, and not merely implied or left to inference.' (Citations omitted.)" The credible evidence refutes the contention that there was ever express permission given to Dale Steller to use the truck for personal purposes.

In Mazdra v. Selective Insurance Company, 398 S.W.2d 841, 844 (Mo.1966), the Supreme Court of Missouri relied

upon the principle stated in 45 C.J.S. Insurance § 829, at page 900:

"In the absence of express consent to an employee to use his employer's car, an implied permission or consent extends only to its use within the scope of the employment, apart from slight deviations, unless there has been a permission to use the car generally or a course of conduct or a practice with the owner's acquiescence, reasonably indicating the employee's right to assume permission in the particular circumstances."

■ The fact that Floyd Boemler had expressly told Dale Steller that certain uses of the truck were prohibited (the hauling of material in the truck) is conclusive evidence that there was no permission to use the truck generally. The remaining question, therefore, in determining whether Dale Steller had implied permission to use the truck at the time of the accident, is whether those personal uses of the truck by Dale Steller known by Boemler reasonably indicated Dale Steller's right to assume permission to use the truck for hauling the horse trailer to O'Fallon, Missouri. The Missouri courts have determined that the existence of implied permission to use a vehicle must be determined primarily as a factual matter in each case. Bourne v. Manley, supra; Wells v. Hartford Accident & Indemnity Company, 459 S.W.2d 253 (Mo.1970).

■ Considering the fact that it was Dale Steller's understanding that the truck was not to be used for personal purposes and the fact that those personal uses of the truck about which Boemler knew, but to which he had not objected, were confined to the area of Imperial, Missouri, this Court concludes that these circumstances do not reasonably indicate Dale Steller's right to assume permission to use the truck to haul a horse trailer to O'Fallon, Missouri. Since Dale Steller was not using the truck at the time of the accident with either the express or implied permission

of Floyd Boemler, under the terms of Universal's policy there is no coverage.

■ There is also no coverage under the policy issued by MFA to Gene Whitener. The pertinent portions of the MFA policy state:

"I—*Definitions*

"(6) *"Non-owned automobile"* means any automobile other than (a) the described automobile, or (b) an automobile owned in whole or in part by, or furnished or available for regular use of, either the named insured or any resident of the same household.

"II—*Automobile Liability Insurance*

"1. *Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability*—The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. Bodily injury sustained by any person;

"B. Property damage sustained by any person; caused by accident and arising out of the ownership, maintenance, or use of the described automobile or non-owned automobile,
\* \* \*

\* \* \* \* \* \*

"3. *Automatic Insurance on Utility Trailers*—The insurance afforded with respect to Coverages A and B applies to any utility trailer while attached to or towed by the described automobile or a non-owned automobile.

"4. *Persons Insured*—With respect to the insurance afforded under Coverages A and B, the following are insureds:

"(a) With respect to the described automobile, (1) the named insured and, if an individual, his spouse, (2) any other person using such automobile with the permission of the named insured or his spouse, provided his actual operation of (if he is not operating) his other actual

use thereof is within the scope of such permission, and (3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (a)(2) above.

"(b) With respect to a non-owned automobile, (1) the named insured and, if an individual, his spouse, provided his or her actual operation of (if he or she is not operating) the other actual use thereof by the named insured or his spouse is with the permission, or reasonably believed to be with the permission, of the owner of such automobile and is within the scope of such permission, and (2) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of the named insured or. his spouse under (b)(1) above."

Counsel for the parties have cited no Missouri or Federal cases in which a provision similar to the "Automatic Insurance of Utility Trailers" provision of the MFA policy has been considered, and this Court has found no such cases. The general rules for the construction of insurance contracts in Missouri have been stated in Central Surety & Insurance Corporation v. New Amsterdam Casualty Co., 359 Mo. 430, 222 S.W.2d 76, 78 (1949):

"'In the construction of the policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614 et seq., 267 S. W. 379, 381, 382. However, as said in 14 R.C.L. § 103, p. 931, the rule "does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity when none exists."' Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, l.c. 101, 57 A.L.R. 615."

The language of the MFA policy (Exhibit 6) is plain and unambiguous. The particular vehicle described in Gene Whitener's MFA policy (Exhibit 4) is a 1967 International truck. The trailer involved in the accident is not described in the MFA policy, but Article II, Section 3, states that "the insurance afforded * * * applies to any utility trailer while attached to or towed by the described automobile or a non-owned automobile." At the time of the accident Dale Steller was driving a "non-owned automobile" as described by Article I, Section 6, of the MFA policy. Article II, Section 4(b) defines those insured under the MFA policy with respect to a non-owned automobile. The only insureds under Section 4(b) are Gene Whitener and his wife and, therefore, Dale Steller is not covered under Section 4(b). Because Dale Steller does not come under the definition of "persons insured" in Section 4(b) of the MFA policy he is not covered by that policy.

Since Dale Steller is not covered by either of the policies of Universal or MFA, this Court need not determine the question of whether Safeco would have been obligated to provide only excess coverage over the coverage provided by Universal and MFA.

Judgment will accordingly be for defendant insurance companies, relieving the defendant insurance companies of any responsibilities of defending Dale Steller in the case pending in the Circuit Court of St. Charles County, Missouri, or paying any judgment or any part thereof obtained in said suit against the said Dale Steller.

This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the clerk will prepare and enter the proper judgment in favor of the defendant insurance companies.