**STATE ex rel. FARMERS INSURANCE COMPANY, INC., Relator,**

v.

**Honorable J. Donald MURPHY, Judge of Division II, Circuit Court of Missouri, Sixteenth Judicial Circuit, Respondent.**

No. 58463.

Supreme Court of Missouri, En Banc.

Feb. 18, 1975.

Sylvester Powell, Jr., Heilbron & Powell, Kansas City, for relator.

Robert K. Ball, II, Jackson & Sherman, Kansas City, for respondent.

FINCH, Judge.

This opinion, written on recent reassignment, involves an original proceeding in prohibition wherein relator, sued in a damage suit on the basis of its uninsured motorist coverage, seeks to prohibit further proceedings against it in the trial court. Relator, alleging that joinder of it with two tortfeasors was improper, filed its petition seeking prohibition in the Court of Appeals, Kansas City District. That court filed an opinion which held that joinder was proper and that the preliminary rule in prohibition previously issued should be quashed.

Subsequently, on application of relator pursuant to Art. V, § 10, Mo.Const., V.A. M.S., we ordered the cause transferred and reheard. In so doing we consider the case as though the original petition for writ of prohibition had been filed in this court. State ex rel. Schneider's Credit Jewelers, Inc. v. Brackman, 272 S.W.2d 289 (Mo. banc 1954). We hold that joinder was permissible and quash the preliminary writ in prohibition.

The suit for damages in the circuit court contained three counts, two by Richard Allen for personal injuries and property damages and one by Allen's wife for loss of consortium. The petition alleged that while Allen was driving south on U.S. divided Highway 61, defendant White crossed a concrete medial divider and collided with Allen's car; that defendant Johnson, traveling south, crashed into the rear of the Allen automobile; and that one of the contributing causes for White crossing the median was the act of an unknown driver who had suddenly cut in front of White and into his lane of travel. In addition to White and Johnson, plaintiffs named as a defendant the insurance com-

pany (relator) which insured the plaintiff Allen's car. The petition alleged that under relator's policy plaintiffs were insured for all sums (up to specified limits) which they were legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle and that under the policy definitions the hit-and-run driver who cut in front of defendant White was an uninsured motorist.

Relator filed in the circuit court a motion to dismiss the foregoing petition on the basis of an asserted misjoinder. The trial court overruled that motion and gave relator time to plead. Its application to the court of appeals for a writ of prohibition followed.

An assertion of misjoinder may involve a contention that claims are improperly joined or that there is an impermissible joinder of parties. Relator's motion stated that the suit against it was based on contract whereas the claims against defendants White and Johnson were in tort and that the two types of claims could not be joined in a single action. This apparently asserted a misjoinder of claims. However, relator cited Rule 52.05 [1] which deals with joinder of parties, claiming that joinder of relator with the other defendants violated that rule. Hence, it would appear that relator asserted both misjoinder of claims and of parties.

At the time the motion to dismiss was ruled upon by the trial court, joinder of claims was governed by Rule 55.07 which provided in part as follows:

"The plaintiff in his petition or in a reply setting forth a counterclaim and the defendant in an answer setting forth a counterclaim may join either as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party. There may be a like joinder of claims where there are multiple parties

if the requirements of Rules 52.04, 52.05 and 52.07 are satisfied."

The foregoing rule conforms to and was derived from § 37 of the General Code for Civil Procedure adopted in 1943.[2] Section 37 was construed in Fawkes v. Fawkes, 204 S.W.2d 132 (Mo.App.1947), as authorizing the joinder of contract and tort claims in a petition or counterclaim.

■ In 1973 this court adopted present Rule 55.06 which superceded what had been Rule 55.07 (also Rule 55.08). Rule 55.06(a) thereof provides as follows:

"A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party."

This new rule is purely procedural and since it does not provide to the contrary, it operates retrospectively as well as prospectively. Scheidegger v. Greene, 451 S.W.2d 135 (Mo.1970); Jackman v. Century Brick Corporation of America, 412 S.W.2d 111 (Mo.1967). It is applicable to this case and governs the question of whether we should issue a writ of prohibition on the basis of a misjoinder of claims.

The source of Rule 55.06(a), as shown by the Committee Note thereto, is Rule 18(a) of the Federal Rules of Civil Procedure. In reporting and recommending this rule for adoption by the court, our Committee on Rules explained its proposal by citing and quoting from the Federal Rules Advisory Committee's Note to Amended Federal Rule 18(a). Included therein was this language:

"The Rules 'proceed upon the theory that no inconvenience can result from the joinder of any two or more matters in the pleadings, but only from trying two or more matters together which

1. All references to Supreme Court Rules are to V.A.M.R.

2. Laws of Missouri [1943] 353.

have little or nothing in common.' Sunderland, The New Federal Rules, 45 W. Va.L.Q. 5, 13 (1938); see Clark, Code Pleading 58 (2d ed. 1947). Accordingly, Rule 18(a) has permitted a party to plead multiple claims of all types against an opposing party, subject to the court's power to direct an appropriate procedure for trying the claims. See Rules 42(b), 20(b), 21.

"The liberal policy regarding joinder of claims in the pleadings extends to cases with multiple parties."

 It is apparent, both from the broad language of Rule 55.06(a) and the Committee explanation thereof, that it was intended to authorize pleading multiple claims of all types against an opposing party and that this would allow claims based on contract and tort to be asserted in the same pleading. This is in harmony with the preceding rule and the statute from which it was taken. Accordingly, we hold that contract and tort claims may be joined in the same petition under the provisions of Rule 55.06(a) and that relator is not entitled to relief herein on the basis of a misjoinder of claims.

We come then to the question of whether, as relator claims, there has been a misjoinder of parties. Rule 52.05(a) which governs that subject provides as follows:

"(a) Permissive Joinder. All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences [sic] or series of transactions or occurrences

and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities."

The second sentence of the foregoing rule spells out what persons may be joined as defendants in one action. Relator makes no contention that no common question of fact or law is involved. Rather, it focuses on the critical words "the same transaction, occurrence or series of transactions or occurrences" and contends that they do not authorize joinder of relator, the party against whom plaintiff asserts an uninsured motorist claim, with White and Johnson against whom claims based on alleged negligent action are asserted. This is true, says relator, because the claim against the insurer arises out of an insurance contract, which is a transaction, whereas the negligence claims grow out of the accident, which is an occurrence; and while the rule permits joinder of claims arising out of either a transaction or series of transactions or out of an occurrence or series of occurrences, it does not permit joinder of those arising from transactions and occurrences.

In support of this position, relator cites State ex rel. Campbell v. James, 263 S.W. 2d 402 (Mo. banc 1954). In that case plaintiff sought to join defendants against whom claims for trespassing resulting from blasting were asserted with insurance companies against which claims for damages based on insurance contracts were asserted. The court held such joinder to be impermissible under § 507.040, RSMo 1949.[3] In so holding the court said, 263 S.W.2d 1. c. 407:

" * * * The statute treats of 'occurrences' and 'transactions' in the dis-

3. The statutory language construed is essentially identical to that in Rule 52.05(a).

junctive and as having separate meanings, as of course they do. It is true that the word 'transaction' has been given a very broad meaning in the case law of this state. See Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S.W.2d 471, 474. But the fact remains that the word 'occurrence' and the word 'transaction' are not synonymous or interchangeable.

"The damages which the plaintiffs in each suit seek to recover from relators are predicated upon trespass and resultant destruction of property, clearly an occurrence. The damages sought against the insurance companies arise out of insurance contracts and nonperformance, clearly transactions. Note that the statute permits joinder only when the right to relief arises out of the same transaction, the same occurrence, or a series of transactions *or* occurrences; not a series of both." [4]

It is clear from the language quoted that the court simply assumed that the words "transaction" and "occurrence" as used in § 507.040 had different meanings and were not synonymous or interchangeable. The opinion made no mention of the source of § 507.040 or how the language in question had been explained or interpreted by those who drafted it or subsequently construed it, although these are pertinent to a determination of the meaning of a statute. State v. Anderson, 515 S.W.2d 534 (Mo. banc 1974). No authority to support the interpretation adopted was cited. As a matter of fact, as will be more fully developed subsequently, the only case referred to in connection with this question in James was Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S.W.2d 471 (1949),

and it supports an interpretation different from that adopted in James. Under these circumstances and particularly in view of the fact that largely since the decision in James, uninsured motorist coverage with its frequent problems of joinder has developed and become commonplace,[5] we conclude that we should re-examine the question of the meaning of the words "same transaction, occurrence or series of transactions or occurrences" which are contained in our Rule 52.05(a).

Rule 52.05(a) was taken from § 507.040 RSMo 1949, which was a part of a new General Code for Civil Procedure adopted by the Missouri General Assembly in 1943. That code was based upon and taken from the Federal Rules of Civil Procedure. Volz & Blackmar, Beneficial Aspects of the Civil Code of Missouri, 3 St.L.U.L.J. 334, 342 (1954–55). That the federal rules were, in fact, the source of the words "transaction or occurrence" as used in the 1943 Code was recognized by this court in Cantrell v. City of Caruthersville, *supra* (the case cited but not followed in James). In that case the court considered § 73 of the 1943 Missouri code relating to counterclaims.[6] After noting that the section was almost identical with Federal Rule 13(a), the court said, 221 S.W.2d l. c. 474:

"* * * The word 'transaction' as used in the Federal Rule 13(a) is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediacy of their connection as upon their logical relationship. This liberal view is now well established. Lesnik v. Public Industrials Corporation, supra [(2 Cir.) 144 F.2d 968]; Moore v. New York Cotton Ex-

---

4. This interpretation of transaction and occurrence was continued by this court in Wells v. Hartford Accident & Indemnity Co., 459 S.W.2d 253 (Mo. banc 1970), and State ex rel. Adrian Bank v. Luten, 488 S.W.2d 636 (Mo. banc 1973), and by the Court of Appeals in State ex rel. Cozean v. Meyer, 449 S.W. 2d 377 (Mo.App.1969), all of which are cited and relied on by relator.

5. A. Widiss, A Guide to Uninsured Motorist Coverage § 1.10; ABA Section of Ins., Negl. & Comp.Law, 1960 Proceedings 281.

6. Presently § 509.420 RSMo 1969. Rule 55.32(a) is substantially the same.

change, 270 U.S. 593, 46 S.Ct. 367, 70 L. Ed. 750, 45 A.L.R. 1370. The word 'claim' and the word 'transaction' are both of broad meaning. The word 'claim' does not refer to the form of the action but to the underlying facts combined with the law giving a party a right to a remedy of one form or another based on the claim. 'Transaction' is a word of still broader meaning. 'Transaction' should be broadly construed to include all of the facts and circumstances which constitute the foundation of a claim; Grue v. Hensley, 357 Mo. 592, 210 S.W.2d 7, at page 10, 'all the facts and circumstances out of which the injury complained of * * * arose.' Ritchie v. Hayward, 71 Mo. 560 at page 562."

As noted, the court in Cantrell held that as used in the section of the statutes relating to counterclaims, the term transaction was sufficiently broad in meaning to include occurrences. The court concluded that such interpretation was well established and was the meaning of the term as used in the federal rules.

Such conclusion is in harmony with what appears to have been the intention of those who drafted the federal rules. Wright, Estoppel by Rule: The Compulsory Counterclaim Under Modern Pleading, 38 Minn.L.Rev. 423 (1954). In this article, Professor Wright reviewed the history of the federal rules relating to counterclaims, including the files of the United States Supreme Court's Advisory Committee on Rules of Civil Procedure. He concluded that there was no evidence that the word "occurrence" had been added to the word "transaction" so as to broaden the rule and thereby include tort claims within the scope of the rule. To the contrary, he states:

" 'The use of the word "occurrence" in the rule in connection with the word "transaction" can serve no other purpose than to make clear the meaning of the word "transaction." An "occurrence" is defined to be a happening; an incident; or event. The word "transaction" is somewhat broader in its scope than the word "occurrence." The word "transaction" commonly indicates an act of transacting or conducting business but in the rule under consideration it is not restricted to such sense. It is broad enough to include an occurrence.' Williams v. Robinson, 3 Fed.Rules Serv. 13a. 11, case 1 (D.D.C.1940)." [7]

Professor Wright further explains the inclusion of the word occurrence in the federal rule as follows:

"The compulsory counterclaim rule is a lineal descendant of Federal Equity Rule 30 and of American statutes going back to 1875. The joinder of parties rule, Fed.R.Civ.P. 20(a), on the other hand, is based on the English rule governing that subject, as it was amended in 1896. Annual Practice 1953, Order XVI, rule 1. This rule had worked smoothly in England. But its adoption in 1920 in New York, in what was then N.Y.Civ.Prac.Act §§ 209, 211, was not equally happy, for in the notorious case of Ader v. Blau, 241 N.Y. 7, 148 N.E. 771 (1925), the New York court managed to emasculate the rule. One of the steps in the process of emasculation was a very narrow construction of the concept 'same transaction,' albeit even this construction admitted that tort claims arise from a 'transaction.' Thus it seems clear that the purpose of the Federal Advisory Committee in adding 'occurrence' to the joinder of parties rule was to prevent the New York construction from being put on the rule by adopting a phrase different from that which was critical in New York." [8]

See also Wright & Miller, Federal Practice and Procedure § 1651 (1972).

7. Wright, Estoppel by Rule: The Compulsory Counterclaim Under Modern Pleading, 38 Minn.L.Rev. 423, 450 n. 124 (1954).

8. Id. at 449 n. 121.

The differentiation made between "transaction" and "occurrence" in James is discussed and criticized in Wheaton, The New General Code for Civil Procedure and Supreme Court Rules Interpreted, 19 Mo.L.Rev. 372 (1954), and in Barron & Holtzoff, Federal Practice and Procedure § 533 (1961). In the latter source the authors state (l. c. 186–87):

"* * * The word 'transaction' is normally defined in terms of 'occurrences,' and the history of the drafting of Rule 20(a) suggests clearly that 'occurrence' was added merely to guard against any over-restrictive definition of 'transaction,' and was not intended to add a new and independent concept. Such, it is believed, is the construction most courts have put upon the rule."

It seems clear from the foregoing articles and cases therein cited that under the federal rules, from which our rules on joinder of claims and joinder of parties are taken, "occurrences" are included in "transactions." It follows that the fact that both terms are used in Rule 52.05(a) is not a basis for concluding that persons may not be joined as defendants on the basis that claims against some of them are contract claims and others are tort claims.

The validity of this conclusion is verified by examination of Rule 55.33(c) and (d) (and of Federal Rule 15(c) and (d) and § 83 of the Missouri 1943 General Code for Civil Procedure [9] from which our Supreme Court Rule was taken). Rule 55.33(c) and (d) provides in part as follows:

"(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. * * *

"(d) Supplemental Pleadings. Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. * * *"

Rule 55.33(c) speaks of "conduct, transaction, or occurrence" and Rule 55.33(d) speaks of "transactions or occurrences or events." If, as James holds, the words transaction and occurrence when used in the disjunctive have separate meanings, it would seem logical to conclude that when a third word such as "conduct" or "events" is added in the disjunctive, the additional word means something different than transaction or occurrence. But what? If transaction means contract claims and occurrence means trespass (James) and negligence (Cozean) claims, then what kind of right to relief shall fall within the classification "conduct," and what kind meets the description "events"? When considering a comparable dilemma with reference to the Minnesota Rules of Civil Procedure, Professor Wright said:

"The rules on relation back of amendments, Fed.R.Civ.P. 15(c), Minn.R.Civ. P. 15.03, and the similar rules in other jurisdictions, say that an amendment relates back if it arises out of 'the conduct, transaction, or occurrence' set forth in the original pleading. If 'transaction' means less, standing by itself, than it does when used in conjunction with 'occurrence,' then rules which speak in one place of 'transaction or occurrence' and elsewhere of 'conduct, transaction or occurrence' must be construed so that the former rule has a narrower scope than the latter. But no one has ever suggested such a result, nor, quite wisely, has anyone ever attempted to say when a claim arises out of the 'conduct' relied on in another claim but not out of the

9. Now § 509.540 RSMo 1969.

'transaction or occurrence.' Again the rules on supplemental pleadings, Fed.R.Civ.P. 15(d), Minn.R.Civ.P. 15.04, speak of 'transactions or occurrences or events'. What 'events' are not 'conduct'? What 'events' are not 'transactions or occurrences'? Compare 1 Youngquist and Blacik, Minnesota Rules Practice 428 (1953); 'It is difficult to imagine a claim the subject of which is neither a "transaction" nor an "occurrence".'

"The real reason for the reference to 'conduct' in Fed.R.Civ.P. 15(c) and to 'events' in Rule 15(d) is that the rulemakers were excessively cautious and wished to give the courts no possible loophole through which to reach a harsh result on the specific problems covered by those specific rules. This is exactly the same reason that 'occurrence' was added to the joinder of parties rule, see note 121 *supra*, and the addition should be of no more significance in the one case than in the other.

"To recapitulate, the Minnesota Rules speak variously of: 'transaction', Rules 13.01, 13.02; 'transaction or occurrence', Rules 13.07, 14.01, 20.01; 'conduct, transaction, or occurrence', Rule 15.03; and 'transactions or occurrences or events,' Rule 15.04. No one has ever suggested that these four different phrases have four different meanings; indeed it seems agreed that the last three all mean exactly the same thing. To hold that the first phrase differs from the last three in meaning merely because it differs from the second phrase in form cannot be justified by logic, and, as has been shown, it is flatly refuted by history and previous judicial construction."[10]

In his article in the Minnesota Law Review, Professor Wright concludes:

"For reasons having nothing to do with the supposed distinction between tort and contract, the joinder of parties rule, which stems from quite a different historical background, was framed in terms of 'transaction or occurrence'. Since the word 'transaction' is normally defined in terms of 'occurrences', the Style Committee which put the Federal Rules into final form felt free to conform the language of the compulsory counterclaim rule to that of the joinder of parties rule. But the decision was treated as one of style, and there is no evidence in the history of the rule that anyone supposed that 'occurrence' had to be added to Rule 13(a) in order to broaden that rule to include tort claims."[11]

We conclude that this court should adopt an interpretation of Rule 52.05(a) which is in accord with the interpretation of the federal rule from which it came. Otherwise we have a situation in which it is permissible under Rule 55.07 in single party cases to have both contract and tort claims asserted in the same suit, but we deny that right in multi-party lawsuits. That this was not intended is clear from Committee Note to Amended Federal Rule 18(a), quoted with approval by our Rules Committee in reporting on Rule 55.06, as follows:

"The liberal policy regarding joinder of claims in the pleadings extends to cases with multiple parties."

As previously pointed out, this interpretation is in accord with what this court said in Cantrell v. City of Caruthersville, supra. It also is in harmony with the philosophy of permissive joinder which is to promote judicial economy, expedite final disposition of litigation and prevent inconsistent results due to multiple separate lawsuits. Any situation wherein it would be unwise or unfair to try all claims asserted at the same time can be handled pursuant to Rule 66.02. See also Rule 52.05(b).

Actually, such an interpretation is consistent with what the courts of this state

10. Wright, *supra* note 7, at 450 n. 125.

11. *Id.* at 449–50.

have permitted in previous uninsured motorist cases. In State ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, 364 S.W.2d 343 (Mo.App.1963), a plaintiff brought suit in two counts, in the first of which he sought damages for personal injuries from two individual defendants. In the second count the plaintiff alleged that he was insured by the defendant State Farm Mutual under a policy which provided that the insurer would pay all sums plaintiff should be legally entitled to recover as damages from an uninsured motorist; that the individual defendants sued in the first count were uninsured; that plaintiff had made demand on State Farm Mutual under the uninsured motorist coverage but it had refused to pay; and that plaintiff should be entitled to recover on the basis of that coverage. The individual defendants defaulted. State Farm filed a motion to dismiss count two against it as premature but filed a motion to intervene in count one, saying that it had reason to believe the individual defendants were uninsured, that the defendant company had interests not being adequately represented and that it might be bound by a judgment as to the individual defendants both on the question of liability and damages. The trial court refused leave to intervene and State Farm sought mandamus to compel the trial court to permit intervention. On appeal the court recognized that State Farm could be bound by a judgment against the individual defendants on the issue of liability and damages and held that it should be permitted to intervene so as to protect its interests.

Next, in Wells v. Hartford Accident & Indemnity Co., 459 S.W.2d 253 (Mo. banc 1970), this court held that when an uninsured motorist carrier has notice of a suit against an uninsured motorist, it has a right to intervene to protect its own interest and that if it does not do so, it is estopped to relitigate issues of liability and damage.

Subsequently, in Beard v. Jackson, 502 S.W.2d 416 (Mo.App.1973), a wife who was injured while riding as a passenger in her husband's car sued the driver of the automobile that collided with her husband's car. The defendant defaulted and did not defend, but the insurance company which had coverage on the car of plaintiff's husband sought leave to intervene on account of the provision in its policy that provided uninsured motorist protection to its insured and passengers in his car. Intervention was permitted and in the trial which followed the jury returned a verdict in favor of both the individual defendant, Charles Jackson, and Transit Casualty Company, the insurer.

On appeal the court affirmed the right of the uninsured motorist carrier to intervene under Rule 52.11(a)(2) (now Rule 52.12(a)(2)), saying, 502 S.W.2d l.c. 419:

"Having established that Transit had the right to intervene, the next question is what may Transit do to protect its interests which were previously unprotected by a defaulting party—a judgment against whom is binding by collateral estoppel against Transit in a subsequent action as to issues determined in the first case. Plaintiff argues that Transit was improperly allowed to raise defenses which defendant Jackson had not raised. This argument mistakes the basic scope of intervention. While it is true that an intervenor must accept the action pending as he finds it *at the time of intervention* his rights *thereafter are as broad as those of any other parties to the action.* Having been permitted to become a party in order to better protect his interest, an intervenor is allowed to set up his own affirmative cause or defense appropriate to the case and his intervention."

Thus, under the intervention rule, the insurance carrier was permitted to intervene and litigate, securing a verdict in its favor in the process, although under relator's interpretation of the words "transaction or occurrence," the result was to litigate in a

single case a claim against Jackson based on an occurrence and one against Transit Casualty based on a transaction. The difference between that case and the one now under consideration is that in Beard, the insurance company was in the case at its own request by means of intervention under what is now Rule 52.12(a)(2), whereas in the case now before us, the election to include the uninsured carrier was made by the plaintiff. It would be illogical to interpret our rules to mean that joinder by a plaintiff of a claim against an uninsured motorist and claims against the tortfeasors in the same automobile accident constitutes a misjoinder of parties, but that if the carrier in such a situation seeks by intervention to become a party, there is no misjoinder.

If, in this instance, the identity of the driver of the car who cut in front of White were known, plaintiff could sue him and if he were an uninsured motorist, relator could intervene and protect its interests. The whole controversy could be settled in one lawsuit, according to Craig, Wells and Beard. Since the name of the hit-and-run driver is not known, there is no way for plaintiff to sue that driver. Hence, if plaintiff is to have any means of enforcing a claim against relator on account of its uninsured motorist coverage, it must be by direct action against the insurance company. This is permissible,[12] but relator is saying to Allen that if you want to enforce your claim of uninsured motorist coverage, you must file two suits, one against the tortfeasors White and Johnson and a separate one against relator. Rule 52.05(a), properly interpreted, does not so require.

It follows that State ex rel. Campbell v. James, *supra*, Wells v. Hartford Accident & Indemnity Co., *supra*, State ex rel. Adrian Bank v. Luten, *supra*, and State ex rel. Cozean v. Meyer, *supra*, to the extent that they hold that contract and tort claims may not be joined in the same petition or counterclaim or adopt an interpretation of the words "same transaction, occurrence or series of transactions or occurrences" contrary to that which we hold herein to be the meaning of those words, should no longer be followed.

Preliminary rule in prohibition quashed.

SEILER, MORGAN, HOLMAN and BARDGETT, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

DONNELLY, C. J., dissents and concurs in separate dissenting opinion of HENLEY, J.

HENLEY, Judge (dissenting).

I respectfully dissent.

I would adhere to the decisions of this court in State ex rel. Campbell v. James, 263 S.W.2d 402 (banc 1953); Wells v. Hartford Accident and Indemnity Company, 459 S.W.2d 253 (banc 1970) and State ex rel. Adrian Bank v. Luten, 488 S.W.2d 636 (banc 1973) holding, in general terms, that the words "transaction" and "occurrence" are not synonymous or interchange-

---

12. Hill v. Seaboard Fire & Marine Ins. Co., 374 S.W.2d 606 (Mo.App.1963), expressly authorizes suit by an insured against his insurance carrier to collect pursuant to the obligation imposed by the uninsured motorist coverage in his policy. Plaintiff's situation differs from that of a plaintiff who seeks to collect from the insurance carrier of a tort-

feasor against whom plaintiff asserts a claim. In that event, according to State ex rel. Anderson v. Dinwiddie, 359 Mo. 980, 224 S.W.2d 985 (banc 1949), § 379.200 RSMo 1969' is applicable and prevents direct action prior to plaintiff obtaining a judgment against the defendant tortfeasor.

able and that § 507.040 (now Rule 52.05(a)) permits joinder of parties only when the right to relief arises out of the same transaction *or* the same occurrence; not both. Judge Hollingsworth's opinion in the James case provided an interpretation of this rule which the bench and bar have followed for more than twenty years. I still agree with that decision, and the advent of uninsured motorist coverage has not shaken my confidence in its basic soundness.

It may be that the history of the drafting of Federal Rule 20(a), as understood by those who authored Barron & Holtzoff, Federal Practice and Procedure (1961), "suggests clearly that 'occurrence' was added merely to guard against any overrestrictive definition of 'transaction' and was not intended to add a new and independent concept." But if that was the intent of the Federal Advisory Committee, I respectfully submit that they should have said so, rather than leave it for someone else to "conclude" that this was their purpose.

Ordinarily each word used in a statute or rule is intended to have a meaning and purpose of its own. To say that "occurrences" are included in "transactions" is to say, in effect, that the word "occurrences" is unnecessarily used in the rule and has no meaning or significance of its own. I respectfully doubt whether the drafters of the original rule intentionally used an unnecessary word or used the second word to guard against a restrictive definition of the first.

The words "transaction" and "occurrence" have always had separate, distinct meanings to me, the same meanings so well articulated in the James case; and I believe the decision in the James case accurately expresses the commonly understood meaning of these words as used in Rule 52.05(a).

I would hold that the joinder of these parties is improper.