**Shirley WEBB and William Webb, Appellants,**

v.

**Dr. Laureano G. MAYUGA and Dr. M. Hasan Choudhury, Respondents.**

No. 17886.

Missouri Court of Appeals, Southern District, Division One.

Aug. 13, 1992.

Separate Motions of Respondents for Rehearing or Transfer to Supreme Court Denied Sept. 2, 1992.

Application to Transfer Denied Oct. 27, 1992.

Frederick H. Schwetye, Union, for appellants.

Bruce E. Hunt, Mann, Walter, Burkart, Weathers & Walter, Springfield, for respondent Mayuga.

Cynthia O. MacPherson, Mountain Grove, for respondent Choudhury.

CROW, Presiding Judge.

Appellants, Shirley Webb and William Webb (wife and husband), filed this suit April 17, 1991, against Respondents, Laureano G. Mayuga and M. Hasan Choudhury, seeking damages for alleged medical malpractice in performing a surgical procedure July 27, 1988, on Shirley Webb. Respondents moved for summary judgment, averring the suit was time-barred by § 516.105 [1] which reads, in pertinent part:

> All actions against physicians ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of occurrence of the act of neglect complained of....

The trial court granted the motion. Appellants bring this appeal from that order.

Appellants concede the two-year limitation applies, but argue the suit is timely by reason of the "savings statute," § 516.230, which reads, in pertinent part:

> If any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, ... such plaintiff may commence a new

---

**1.** References to statutes are to RSMo 1986.

action from time to time, within one year after such nonsuit suffered. . . .

Appellants' reliance on this statute is based on a suit filed November 6, 1989, in the Circuit Court of Franklin County ("the first suit").

The plaintiff in the first suit was Texas County Memorial Hospital ("Hospital"). The defendants in that suit were Shirley Webb and William Webb (Appellants here). By its petition, Hospital sought judgment against the Webbs for $1,285.09 for care and treatment allegedly provided by Hospital to Shirley Webb. An exhibit attached to Hospital's petition indicated the services were provided from July 16, 1988, to July 21, 1988.

On July 11, 1990, the Webbs filed two documents in the first suit. One was captioned, "Joinder of Counter–Defendants." It read:

> Come now Defendants/Counter–Plaintiffs, Shirley and William Webb, pursuant to Rule 55.32 and Rule 52.05 of the Missouri Rules of Civil Procedure and hereby join Dr. Laureano G. Mayuga and Dr. M. Hasan Choudhury as Counterclaim Defendants.

The other document filed by the Webbs on July 11, 1990, in the first suit was captioned, "Counterclaim of Defendants Shirley Webb and William Webb." By that pleading, the Webbs demanded damages from Hospital, Mayuga and Choudhury for alleged negligence in performing the surgical procedure of July 27, 1988, on Shirley Webb. Summonses were issued to, and served on, "Counter–Defendants" Mayuga and Choudhury.

By an order filed December 12, 1990, in the first suit, the Circuit Court of Franklin County dismissed the Webbs' counterclaim against Hospital on the ground that Hospital is a political subdivision of the State and thus sovereignly immune from liability. The order declared Mayuga and Choudhury had challenged venue on the ground that they are residents of Texas County, and consequently not subject to suit in Franklin County. On that issue, the order stated:

> If venue in Franklin County was ever proper against the Texas County Doctors, it was ancillary to the venue provided by the Hospital's suit against the Webbs in Franklin County. Dismissal of the Hospital severs the venue connection.
>
> . . . .
>
> [T]he counterclaim is dismissed as to the Hospital and dismissed without prejudice as to Doctors Mayuga and Choudhury. . . .

The Webbs appealed from the above order to the Eastern District of this Court, but voluntarily dismissed the appeal on or about April 16, 1991. As reported in the first sentence of this opinion, they filed the instant suit April 17, 1991.

Appellants maintain the instant suit is timely per § 516.230 in that they commenced it within one year after suffering a nonsuit of their counterclaim in the first suit.

A plaintiff suffers a nonsuit when a court order finally terminates the cause without prejudice. *Gray v. Chrysler Corp.,* 715 S.W.2d 282, 285[6] (Mo.App. 1986). Where a timely suit is filed and subsequently nonsuited, the plaintiff may thereafter refile the same cause of action within one year after the nonsuit. *U.S. Laminating Corp. v. Consolidated Freightways Corp.,* 716 S.W.2d 847, 850[5] (Mo.App.1986); *Seewald v. Gentry,* 220 Mo.App. 367, 286 S.W. 445, 455[22] (1926).

Examination of Appellants' counterclaim in the first suit and their petition in the instant suit confirms—and Respondents tacitly concede—that those pleadings assert the same cause of action. The order of dismissal in the first suit (quoted earlier in pertinent part) specified the dismissal of the counterclaim against Mayuga and Choudhury was without prejudice.

Where a defendant is sued by a hospital for an unpaid bill, and the defendant files a counterclaim for malpractice against the hospital and the doctors who treated him, he is a "plaintiff" within the meaning of the savings statute, § 516.230. *Cooper v. Bolin,* 431 S.W.2d 69, 70–72 (Mo. 1968). It therefore appears Appellants commenced the instant suit within the time allowed by § 516.230.

■ However, say Respondents, Appellants cannot invoke § 516.230 because, in Respondents' words:

> The counterclaim filed by Appellants in the [first] suit and the attempted joinder of Respondents in that action as counter defendants were void and a nullity and did not toll the running of the statute of limitations ... [§] 516.105 ... because:
>
> 1. Appellants failed to obtain leave of court to file the aforesaid counterclaim and failed to obtain leave of court to have Respondents joined and served with service of process as counter defendants for which reasons their joinder was improper, void and a nullity, the service of process purportedly obtained upon Respondents was likewise improper, void and a nullity and the trial court never acquired personal jurisdiction over Respondents.
>
> 2. Joinder of Respondents was impermissible under Supreme Court Rule 52.05 ... since the claims made against them by Appellants did not arise out of the same transaction, occurrence or series of transactions or occurrences which was the basis of the underlying collection action.
>
> 3. Venue in Franklin County ... was improper and provided no basis for tolling of the two year statute of limitations.

We shall consider these contentions in the order presented.

In support of contention 1, Respondents declare it is a well known principle that in Missouri, leave of court must be obtained to assert a counterclaim against a nonparty. However, the principle is evidently not too well known, as Respondents confess they can find no Missouri case establishing it.

Undaunted, Respondents insist federal cases interpreting the federal rule upon which Missouri Rule 52.06[2] is based confirm that leave of court must be obtained before filing a counterclaim against a non-party. Citing *Kingsley v. Burack*, 536 S.W.2d 7, 11 (Mo. banc 1976), Respondents assert that where Missouri and federal rules are essentially the same, it is appropriate to use federal precedents as a guide to the application of the Missouri rule.

Continuing, Respondents argue by analogy that in instances where a party cannot amend his pleading as a matter of right, Rule 55.33(a) requires that he obtain leave of court or written consent of the adverse party before amending. Respondents remind us of our holding in *Houck by Houck v. Morrow*, 786 S.W.2d 604, 606[1] (Mo. App.1990), that an amended pleading tendered for filing in violation of Rule 55.33(a) is "surplusage and without significance."

By the same logic, say Respondents, "[T]he effect of joining a non-party is surplusage and without significance when leave of court has never been obtained to join the non-party as a counter-defendant." Consequently, reason Respondents, "[T]he legal effect of such impermissible joinder is the same as though the counterclaim was never filed and never commenced."

If that be so, argue Respondents, the posture of the instant suit is identical to *Jackson v. Whitaker*, 386 S.W.2d 657 (Mo. App.1964). There, two plaintiffs attempted to invoke § 516.230, arguing their suits in Benton County were commenced within one year after suffering nonsuits in the same causes of action in Jackson County. There were two defendants in the Jackson County suits. One was a resident of Benton County; the other (an administrator *de bonis non* of a decedent's estate) was a resident of Jackson County. The first publication of notice of letters of administration of the decedent's estate had occurred almost five years before the plaintiffs instituted the Jackson County suits. Neither plaintiff had complied with the nine-month filing requirement of the probate non-claim statutes. Consequently, the Jackson County suits were barred as to the administrator. Therefore, he was not a "legitimate" defen-

---

**2.** Rule 52.06, Missouri Rules of Civil Procedure (1992), reads: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just...."

dant so as to render the co-defendant (the Benton County resident) subject to suit in Jackson County. 386 S.W.2d at 659. Accordingly, the Jackson County suits were dismissed.

Within a year, the plaintiffs commenced their Benton County suits, solely against the Benton County defendant. The trial court granted the defendant's motion for summary judgment. Affirming, the appellate court noted language in *Phillips v. Whittom*, 354 Mo. 964, 192 S.W.2d 856, 857 (1946), to the effect that if a plaintiff makes an innocent mistake in filing his previous action in the wrong forum, he will not be denied the benefit of the savings statute. *Jackson*, 386 S.W.2d at 660. However, held *Jackson*, the plaintiffs there knew or should have known that by reason of their failure to comply with the probate non-claim statutes, they could not maintain their suits against the administrator. *Id.* at 662. Therefore, said the court, "[W]e cannot conclude that the Jackson County cases were brought without an undue and unreasonable amount of negligence." *Id.* Because the Jackson County suits "were not legally maintainable" they were never "commenced" within the meaning of § 516.230, hence that statute did not allow the subsequent Benton County suits. *Id.* at 663.

In this appeal, Respondents liken their situation to *Jackson*. According to Respondents, all the Circuit Court of Franklin County could do in the first suit was "purge its docket of the counterclaim and take no further action having never obtained personal jurisdiction over [them] because of improper joinder." Respondents proclaim that as a matter of law, their improper joinder in the first suit did not toll the running of the statute of limitations, § 516.105.

We detect a significant difference between the instant suit and *Jackson*. There, the plaintiffs' claims against the administrator were indisputably time-barred by the probate non-claim statutes. Here, Appellants' counterclaim against Hospital (and Respondents) in the first suit was not time-barred.

In their counterclaim in the first suit, Appellants averred Hospital is a Missouri corporation. Evidently, Appellants were relying on paragraph 1 of Hospital's petition, which alleged, "Plaintiff is a corporation authorized to bring this action." At the foot of Hospital's petition was an affidavit of its lawyer stating: "... the facts stated in the above and foregoing Petition are true according to [my] best knowledge and belief."

From the record furnished us, it appears the finding by the Circuit Court of Franklin County that Hospital was shielded by sovereign immunity was based on an affidavit of Hospital's administrator (filed sometime during the pendency of the first suit and not controverted by Appellants) that Hospital is a county hospital established per § 205.160, *et seq.*, RSMo 1986. Nothing in the record indicates Appellants knew or should have known of Hospital's status as a governmental facility at the time they filed their counterclaim in the first suit. Indeed, Hospital's own lawyer was apparently unaware of it.

In this appeal, we must scrutinize the record in the light most favorable to Appellants, the parties against whom summary judgment was entered, according them the benefit of every doubt. *Pataky v. Mertens Const. Co.*, 829 S.W.2d 38, 40[1] (Mo.App. 1992); *Geisinger v. A & B Farms, Inc.*, 820 S.W.2d 96, 98[1] (Mo.App.1991). So viewed, the record cannot support a finding that Appellants were guilty of negligence or bad faith in being unaware, at the time they filed their counterclaim in the first suit, that Hospital was cloaked with sovereign immunity.

We likewise find no negligence or bad faith in Appellants' failure to obtain leave of court before filing their counterclaim in the first suit. As noted earlier, Respondents are unable to cite any Missouri case holding leave of court was required.

Arguably, Rules 52.05, 52.06 and 55.32, read together, prevent a defendant from filing a counterclaim against a non-party without first obtaining leave of court to add such entity as a party. Obviously, had Appellants obtained leave to add Respon-

dents as defendants in the first suit, Appellants would have avoided a troublesome issue in this appeal.

However, *State ex rel. Gulf Oil Corp. v. Weinstein*, 379 S.W.2d 172, 175[4] (Mo. App.1964), holds permissive joinder of parties is fixed by rule and a trial court cannot exercise any discretion in regard thereto contrary to rule. If that be so, it is arguable that seeking leave of court to add parties for the purpose of asserting a counterclaim against them would be a needless act, inasmuch as the trial court would be powerless to deny leave in instances where joinder is authorized by rule.

We need not, and do not, decide that issue. What we do decide is that absent Missouri case law on the question, the record, viewed favorably to Appellants, does not support a finding that they were guilty of negligence or bad faith by failing to obtain leave of the Circuit Court of Franklin County to join Respondents as parties in the first suit before filing the counterclaim.

Accordingly, we conclude that *Jackson*, relied on by Respondents, does not warrant a holding in this appeal that Appellants' counterclaim in the first suit was never "commenced" within the meaning of § 516.230. Respondents' contention 1 is denied.

In support of contention 2, Respondents argue that by reason of Rule 52.05, the "permissive joinder rule," a defendant can assert a counterclaim against a non-party only if the counterclaim arises out of the transaction, occurrence, or series of transactions or occurrences on which the plaintiff bases its claim against the counterclaiming defendant. Respondents assert the claim by Hospital against the Webbs in the first suit concerned only Shirley Webb's hospitalization from July 16, 1988, to July 21, 1988. Respondents continue:

> The facts that gave rise to the alleged medical malpractice action against Respondents occurred during an entirely different hospitalization, a hospitalization from [July 26, 1988, to August 15, 1988]. Since the claims did not arise out of the same transaction or occurrence, or series of transactions, the [Circuit Court of Franklin County] did not have the discretion to order joinder of such claims under Rule 52.05(a).

As factual support for contention 2, Respondents direct us to some 24 pages of "hospital charts" in the legal file. These documents, as we comprehend them, indicate Shirley Webb was admitted to Hospital on July 16, 1988, discharged on July 21, 1988, readmitted to Hospital on July 26, 1988, and discharged on August 15, 1988.

While we profess no expertise in interpreting medical records or deciphering physicians' handwriting, it appears the two periods of hospitalization were for the same combination of ailments. The discharge summary regarding the first hospitalization includes this: "The patient had been insisting to have surgery done on account of she is having lots of problems with discomfort and she just claims that she could not be living like this any longer. The patient will be brought back for surgery."

A "Patient Discharge Instruction Sheet" dated July 21, 1988, the last day of the first hospitalization, appears to instruct Shirley Webb to "come to Hospital for admission Tuesday 7/26/88."

The discharge summary regarding the second hospitalization indicates that between the first and second hospitalizations, Shirley Webb was instructed to take medication designed to ready her for the surgery performed July 27, 1988, the second day of the second hospitalization.

Appellants argue the two periods of hospitalization constituted a continuing treatment regimen for the same afflictions, culminating in the faulty surgery. Therefore, argue Appellants, the services rendered by Hospital during the first hospitalization (for which Hospital sought payment in the first suit) were among the series of transactions or occurrences from which Appellants' medical malpractice claims against Hospital and Respondents arose.

In adjudicating this appeal, we need not decide whether Appellants' counterclaim in the first suit arose from the series of transactions or occurrences on which Hospital

based its claim against Appellants. That is because summary judgment is a drastic remedy, *Gast v. Ebert*, 739 S.W.2d 545, 546 (Mo. banc 1987), and may be rendered only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.-04(c); *Pataky*, 829 S.W.2d at 40; *Lewis v. El Torito Restaurants, Inc.*, 806 S.W.2d 46, 47[1] (Mo.App.1991).

The record here, viewed favorably to Appellants, presents a genuine issue of material fact, i.e., whether their counterclaim in the first suit arose from the series of transactions or occurrences on which Hospital based its claim against them. That issue was not decided by the Circuit Court of Franklin County in the first suit, hence Respondents cannot invoke collateral estoppel to eliminate the issue here.

Because of this issue of material fact, we cannot say as a matter of law that Appellants' counterclaim in the first suit was impermissible under Rule 52.05. Therefore, the record does not warrant a holding in this appeal that Appellants' counterclaim in the first suit was never "commenced" within the meaning of § 516.230. Respondents' contention 2 is without merit.

As to contention 3, Respondents assert—and Appellants concede—that the only way venue of Appellants' malpractice claims against Respondents could lie in Franklin County would be under the "ancillary venue doctrine." Respondents argue:

As a general principle, the doctrine of ancillary venue is that where venue of the original action is proper, a venue statute does not apply to a [counterclaim] ancillary to the original action. As a predicate to the application of the rule, the claim against a third party who is brought into the action must arise out of the same subject matter of the original action. If the claim against the impleaded party does not arise out of the underlying suit ... the doctrine of ancillary venue does not apply and the regular venue requirements must be met.

Respondents contend that because Hospital was shielded by sovereign immunity from Appellants' counterclaim in the first suit, there was no viable claim against Hospital in that suit to which Appellants' malpractice claims against Respondents could have been ancillary. Respondents also reiterate their theory that because Appellants' malpractice claims did not arise from the first hospitalization, such claims could not be asserted in a counterclaim against Respondents in the first suit.

It is unnecessary to decide whether Respondents' premises are legally sound. Even if they are, we are unpersuaded the record supports a finding that Appellants were guilty of negligence or bad faith in filing their counterclaim for malpractice against Hospital and Respondents in the first suit.

Had Hospital not been sovereignly immune from malpractice liability, Appellants could undoubtedly have maintained their counterclaim against Hospital in the first suit. Rules 55.06(a) and 55.32(b); *State ex rel. Farmers Insurance Co., Inc. v. Murphy*, 518 S.W.2d 655, 658[2] (Mo. banc 1975). Respondents, as we understand them, concede that if Appellants could have maintained their counterclaim against Hospital in the first suit, the ancillary venue doctrine would have allowed Appellants to also maintain their counterclaim against Respondents in that suit (assuming such counterclaim satisfied the "same series of transactions or occurrences" requirement).

Nothing in Hospital's petition in the first suit put Appellants on notice that Hospital was protected by sovereign immunity. On the contrary, as noted earlier, Hospital's petition alleged it is a corporation. Only after Appellants filed their counterclaim against Hospital and Respondents did Hospital reveal it is a county hospital, and only then did it appear Appellants would be unable to maintain their counterclaim against Hospital.

In *Wente v. Shaver*, 350 Mo. 1143, 169 S.W.2d 947 (1943), the plaintiff sued the defendant in the City of St. Louis. The defendant pled in abatement that venue was improper because she resided in St.

Louis County. The plea in abatement was sustained, and the plaintiff took a voluntary nonsuit. By then, the statute of limitations had run. Within a month after the nonsuit, the plaintiff filed the same cause of action in St. Louis County. The Supreme Court of Missouri held the plaintiff was entitled to the benefit of the savings statute. The Court said, "[T]he saving statutes have been applied to nonsuited litigants who have, by innocent mistake, filed their cause in the wrong forum." 169 S.W.2d at 953[3]. The Court added, "The negligence here, if any, is slight, and not such as to justify denying to plaintiff the benefit of the [savings] statute." *Id.* at 954.

*Wente* was cited three years later in *Phillips*, 192 S.W.2d 856, 857, another case involving the savings statute. There, the Supreme Court of Missouri discussed a "good faith" requirement for invoking the statute, equating good faith with "the diligence that an honest man of ordinary prudence is accustomed to exercise." *Id.* The Court acknowledged the rule in *Wente*, but went on to hold that the negligent bringing of a void action would not toll the statute of limitations if the plaintiff's negligence were great enough. *Id.*

Earlier, in our discussion of Respondents' contention 1, we held the record cannot support a finding that Appellants were guilty of negligence or bad faith in being unaware, at the time they filed their counterclaim in the first suit, that Hospital possessed sovereign immunity. In considering Respondents' contention 2, we were unable to say, as a matter of law, that Appellants' counterclaim in the first suit failed to satisfy the "same series of transactions or occurrences" requirement (assuming, arguendo, that such requirement had to be met in order for Appellants to maintain their counterclaim against Respondents in the first suit).

Applying *Wente* and *Phillips* to the record here, we hold Appellants are entitled to invoke the savings statute. Inasmuch as they (a) filed their counterclaim against Respondents in the first suit within two years after the alleged malpractice oc-

curred, and (b) filed the instant suit within one year after suffering the nonsuit of their counterclaim in the first suit, the instant suit was timely per § 516.230.

The order granting summary judgment is reversed and the cause is remanded to the trial court for further proceedings.

PARRISH, C.J., and SHRUM, J., concur.