John A. HEWITT and Betty Hewitt,
and Roberta Ellen Ables,
Appellants,

v.

CITY OF KANSAS CITY,
Missouri, Respondent.

No. WD 40056.

Missouri Court of Appeals,
Western District.

Oct. 25, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 29, 1988.

Application to Transfer Denied
Jan. 17, 1989.

William H. Pickett, Kansas City, for appellants.

Richard N. Ward, City Atty., Jeffrey L. Hess, Asst. City Atty., Kansas City, for respondent.

Before CLARK, P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

The plaintiffs appeal from a jury verdict and judgment for the City of Kansas City in a wrongful death claim arising out of a two-car, head-on accident on Stark Avenue in Kansas City, Missouri. The plaintiffs are the surviving parents of two teenage boys who died as a result of the accident. In this suit they claimed the accident was caused by the dangerous condition of a city road, Stark Avenue. Kansas City controls and maintains the street and right of way where the accident occurred. The speed limit on Stark is 25 miles an hour. It is a rural, two-lane paved road. It is approximately 20 feet wide without a shoulder and has a steep depression on the west side of the roadway. The roadway where the accident occurred is straight and hilly.

The evidence was that on September 4, 1982 at 12:30 a.m. the decedents were traveling north on Stark. Billy Kays, another motorist, was driving in the opposite direction on that same roadway. According to the plaintiffs' theory the tires of Kays' vehicle had gone off the right side of the road, because of the dangerous condition of the roadway, and in order to get his car back on track Kays turned his wheel sharply to the left. As a direct result of this maneuver the car crossed over the median and collided with the decedents' vehicle. The suit versus Kays was settled and this wrongful death action against the City for dangerous condition ensued. Sovereign immunity of the City is not a defense in this case.

The plaintiffs raise six points of error on appeal. The first point is that Dennis Christian should not have been allowed to testify concerning the speed of Kays' vehicle. Christian was called as a witness by the plaintiffs. During that examination Christian testified that he spotted Kays' car go by him prior to the accident in question. The witness testified that he did not, however, know the speed of the car at the time of the accident. Plaintiff's counsel, during cross-examination, apparently anticipating that the witness would be asked his opinion concerning the speed of Kays' car objected. The trial judge questioned counsel as to the distance between the point where Kays' car passed Christian and the location of the accident and plaintiff's counsel responded 50 to 100 yards. The court overruled the objection.

Christian testified that he was riding his motorcycle on Stark Avenue on the night of the accident in question. As he turned off the road he observed a large green car (Kays' car) go "flying by" on Stark Avenue. As he was turning his motorcycle into his driveway, Christian heard a "big impact." He turned his bike around and went back to Stark Avenue and made his way to the accident. He arrived at the scene shortly thereafter. He saw the green car that had gone flying by upside down in a ditch and he also observed another car "imbedded into the ditch." On cross-examination the witness testified that he was familiar with speeds and could estimate the speed of a car. There was no contention he was incompetent to testify on this issue. He stated that when Kays' car passed him it was going approximately 70 miles an hour.

"To be admissible, evidence of prior speed must be 'connected' with the speed of a vehicle just before the collision, or when danger of it should have been apparent, 'in such a way that the conduct of the driver may be said to be continuous. This on the concept that because speed may be altered, proof of its speed at one point does not prove speed at another unless there is a factor which offers a finding or inference that the speed was constant.'" *State Ex. Rel. Missouri Highways & Transp.*

*Comm'n v. Legere,* 706 S.W.2d 560, 567 (Mo.App.1986) (citations omitted). The testimony by various witnesses along a continuum as to a speed of a vehicle may be admissable. This holds true even if the first person in that continuum was several miles from the point of the accident. *Long v. Mild,* 347 Mo. 1002, 149 S.W.2d 853, 858–59 (1941) (A police officer testified as to speed of vehicle several miles from point of accident. He was able to follow the vehicle from that point up to three and one-half blocks from the point of collision. Another witness saw the car from the point where the officer lost sight of it and witness was able to confirm the officer's estimate of the car's speed. That witness eventually lost sight of the car near a refreshment stand. Another witness, however, did see the car near that refreshment stand. That witness testified she saw the car from that point until the collision. That final witness concurred with the various estimates given as to the speed of the vehicle.).

In *Douglas v. Twenter,* 364 Mo. 71, 259 S.W.2d 353, 357–58 (1953), the Missouri Supreme Court concluded "the absence of continuous visual observation for a certain distance does not necessarily make prior speed testimony inadmissable." In *Douglas,* five witnesses testified as to the speed of a truck some one-half to three-fourths of a mile from the point where it was involved in a collision. Several of the witnesses continued to observe the vehicle until several seconds before the accident. The court stated: "One of the ultimate facts to be proved by plaintiff was the truck's speed at the time of the collision. We are of the opinion that the testimony of these five witnesses was legally relevant, i.e., material on the ultimate issue of speed at the time of the collision." *Id.* at 357.

The concept that the testimony concerning the speed of the vehicle must be "connected up" with the accident remains intact. However, the ways that testimony has been "connected up" vary. Most relevant to the present discussion is the case of *Wood v. Ezell,* 342 S.W.2d 503, 508 (Mo. App.1961). In that case a witness testified that he saw a Desoto a half mile from the

point where the car was involved in a collision. The witness heard the crash and went to the scene. Since "[t]he incident was related closely in place and time and by sound" the statements by the witness as to the speed of the car were *admissable. Id.* at 508. *See also, Stapleton v. Griewe,* 602 S.W.2d 810, 815 (Mo.App.1980) (explaining *Wood* ).

A person familiar with speeds may testify as to the speed of a vehicle observed. The brevity here of Christian's observation does not detract from admissibility nor destroy his credibility; rather, it goes to its weight and value. *Vaeth v. Gegg,* 486 S.W.2d 625, 627 (Mo.1972). Moreover, there was a sufficient connection between the witness' observation and the accident. He observed the car speed by him, heard the crash and went to the scene of the accident (50 to 100 yards from where the car was originally observed) and arrived at the accident site within a minute and a half of original observation.

The cases the appellant cites concerning testimony about the speed of a vehicle are inapposite. Most of the cases cited concern offered testimony by people who estimated speeds based on reconstruction techniques, *i.e.,* skid marks, damage to the cars, etc., not eyewitness sightings, *see, e.g., Cheek v. Weiss,* 615 S.W.2d 453 (Mo.App.1981); *Missey v. Kwan,* 595 S.W.2d 460 (Mo.App. 1980). The one eyewitness testimony case that was cited, which is worth noting, is *Stelmach v. Saul,* 51 S.W.2d 886 (Mo.App. 1932). In that case the trial court properly sustained defendant's motion for new trial upon the grounds that the court erred in admitting testimony by an individual who saw a truck speed by him on two separate occasions during the day of an accident. The last time the individual saw the truck was 15 to 20 minutes before the accident. The court ruled since this testimony was not "connected up" to the accident, it could only be considered testimony of custom and was inappropriately submitted under the circumstances.

■ The trial court has broad discretion in admitting or rejecting evidence on rele-

vancy grounds. *Missouri Commercial Inv. Co. v. Employers Mut. Cas. Co.*, 680 S.W.2d 397, 402 (Mo.App.1984). In the present instance, the trial judge determined the distance and time between the sighting and the accident was close enough so that the information was relevant. Moreover, the evidence was relevant to the issues of the case. The question is whether the dangerous condition of the roadway caused the accident, but Kays' speed at the time of the accident would be an intervening cause and bears on what speeds the city allowed or could expect on the street. The admission into evidence of the plaintiffs' witness' estimate of speed was not error.

The plaintiffs' second point is that the trial court improperly admitted testimony concerning the "right of way" dimensions of Stark Avenue. The trial court allowed testimony from a retired city engineer of Kansas City, over objection from plaintiffs' counsel, concerning the right-of-way along Stark Avenue. It cannot be said that the evidence, even if irrelevant, was prejudicial. Reversal for the submission of irrelevant evidence should only be sustained if the information resulted in prejudice to the appellant. *Libby v. Hill*, 687 S.W.2d 264, 266 (Mo.App.1985). *See also, Fitzpatrick v. St. Louis–San Francisco Ry. Co.*, 327 S.W. 2d 801, 807 (Mo.1959). Even if the plaintiffs had not elicited testimony during trial clarifying any misunderstandings concerning the right-of-way along Stark Avenue, the admission of the testimony still would not have caused the type of prejudice requiring reversal. The plaintiffs' next point is that the cumulative effect of testimony concerning right-of-way coupled with testimony concerning the excessive speed of Billy Kays' automobile caused prejudice requiring a new trial. This point is rejected.

■ The fourth point raised on appeal is that the plaintiffs' experts should have been allowed to testify as to the dangerous condition of Stark Avenue. The trial judge, during a pre-trial conference, concluded that traffic experts would not be allowed to render a conclusion to whether the drop-off on Stark Avenue was a dangerous condition. The court later re-

affirmed it's conclusion at trial. Although the sufficiency of the offer of proof is raised by the city, the court need not consider that issue.

An oft cited case concerning when an expert should be allowed to testify as to conclusions is *Housman v. Fiddyment*, 421 S.W.2d 284 (Mo. banc 1967). In that case the jury had before it the testimony of the two drivers involved in an accident, photographs of the roadway, testimony of the photographers, damage to the vehicles, skid marks, and testimony of a traffic officer. The question remained as to whether an expert could give his opinion as to the point where the two vehicles collided. The supreme court concluded the jurors could come to a conclusion on their own and therefore the expert's testimony was unwarranted. The court stated:

> When jurors, for want of experience or knowledge of the subject under inquiry, are incapable of reaching an intelligent opinion without outside aid the courts out of necessity admit the testimony of experts in the field. Allowing an expert to give an opinion upon a subject of inquiry, instead of requiring that the witness give only *facts*, is an exception to the general rule that witnesses must state facts. "The exception is allowed from necessity."

*Id.* at 289. (citations omitted).

The *Housman* court quoted from *Benjamin v. Metropolitan St. Ry. Co.*, 133 Mo. 274, 34 S.W. 590, 593 (1896). That court stated:

> It is the province of the jurors to draw all inference and conclusions from the evidence before them. The witnesses, as a general rule, must state facts, from which the jurors are to form their opinion. But when the facts are all stated, upon a subject of inquiry, if an intelligent opinion cannot be drawn therefrom by inexperienced persons, such as constitute the ordinary jury, an exception is made to the general rule, and persons who, by experience, observation, or knowledge, are peculiarly qualified to draw conclusions from such facts, are, for the purpose of aiding the jury, permitted to give their opinion. The excep-

tion is allowed from necessity. An expert witness, in a manner, discharges the functions of a juror; and his evidence should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved.

*Housman,* 421 S.W.2d at 289.

The *Housman* court also articulated a standard of review. "The determination of the question of necessity rests in the first instance in the sound discretion of the trial judge and his discretion in this respect will not be set aside in the absence of a showing of an abuse of discretion." *Id. See also Dunkin v. Reagon,* 710 S.W.2d 498, 500 (Mo.App.1986).

The case of *Hendricks v. Missouri–Kansas–Texas Ry. Co.,* 709 S.W.2d 483 (Mo. App.1986), is also applicable. That case concerned a collision between a car and a train. One of the issues of that case was whether an expert should have been allowed to testify as to the abnormally dangerous condition of the railroad crossing where the accident occurred. The court stated that "[o]pinion testimony of an expert witness *should never* be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved." *Id.* at 492. (citations omitted) (emphasis added). The court went on to find that all of the evidence from which the expert formed his opinion was within the "ken of the average juror." *Id.* Having found that twelve jurors could reasonably determine from the submitted evidence that the crossing was or was not abnormally dangerous the expert shouldn't have given his opinion on that issue.

Similarly, in the instant case the jury had adequate information with which to come to its own conclusion as to the condition of Stark Avenue. They had the benefit of Billy Kays' deposition; photographs of the scene (taken six to seven hours after the accident); and testimony of thirty-three witnesses (some given through deposition). Those testifying included the plaintiffs' ex-

perts (albeit not allowed to give conclusions), police officers (testifying as to skid marks and debris at the scene), and Dennis Christian. Therefore, the trial judge did not abuse his discretion in concluding the jurors were provided with enough information to come to their own conclusion as to whether or not the roadway was dangerous.

■ The fifth point raised on appeal concerns the plaintiffs' objection to defense counsel's closing argument during which he made the following statement: "Four hundred, approximately, an average of four hundred cars passed there [the place of the accident] on an average every day. There were no accidents brought to you except this one. This condition next to the roadway, yeah, if somebody goes and drives off a ditch, we all know that can be a hazard and especially if there is a drop-off like that." On appeal the plaintiffs see this remark as a blatant attempt to prejudice the jury because no proof was offered to support this statement. Yet, the plaintiffs made no objection to this statement at the time it was made. The plaintiffs correctly quote from *Stewart v. Boring,* 312 S.W.2d 131, 135 (Mo.1958), that some statements made during trial are "so manifestly inflammatory and improper that a general objection, perhaps no objection, is sufficient to call for affirmative action on the part of the trial court." Viewing the record as a whole, the trial court did not abuse its discretion in not granting a new trial, because even if the statement was improper it was not so plainly inflammatory as to have affected the result of this case. *Collins v. Cowger,* 283 S.W.2d 554, 560 (Mo. 1955). When an argument is not manifestly improper the discretion rests with the trial court and "there must be timely objection, successive requests for specific action and specific assignment in the motion for a new trial." *Stewart, supra,* at 135 (citations omitted). Under plain error review, no manifest injustice or miscarriage of justice occurred. Rule 84.13(c).

The sixth point raised on appeal concerns the trial court's failure to grant plaintiffs' motion for new trial because the verdict

was against the weight of the evidence. The evidence showed that there was an accident between two vehicles. There was evidence as to the location of debris and gouge marks, one of the driver's deposition was read, and testimony by experts was given as to the roadway. It was up to the jury to listen to this testimony and draw its own conclusions. It was up to them to believe or disbelieve Kays, it was up to them to determine the exact point of collision, and it was up to them to determine whether the accident was in part caused by the alleged dangerous condition of Stark Avenue. The verdict was supported by evidence, and it was ultimately up to the trial court, not an appellate court, to determine whether the evidence was against the weight of the evidence. *Lee v. Mirbaha*, 722 S.W.2d 80, 85 (Mo. banc 1986); *Roeder v. Aetna Life & Cas. Co.*, 738 S.W.2d 938, 945–46 (Mo.App.1987).

The disposition on the merits of the appeal makes unnecessary a formal ruling on the city's assertion of lack of jurisdiction of the trial court to hear the case because of plaintiffs' failure to give the city notice within ninety days of the accident. Section 82.210, RSMo. 1986.

Although interpreting a predecessor to Section 82.210, the supreme court in *Glasgow v. City of St. Joseph*, 353 Mo. 740, 184 S.W.2d 412, 416 (1944), held that notice was not required in an action for wrongful death. Despite prompting by the courts that the legislature define the scope of the notice requirements as it applies to wrongful death, the legislature has not addressed this issue in Chapter 82 nor in the wrongful death statute, Section 537.085, RSMo. 1986.

This court pauses to note agreement with the supreme court's conclusion in *Schumer v. City of Perryville*, 667 S.W.2d 414, at 416–17 n. 3 (Mo. banc 1984), that the original justification for this type of notice of claim statute is no longer valid. As that court noted:

> Today, our cities are allowed to purchase liability insurance, they maintain modern police and fire departments to investigate accidents and take prompt remedial action, and furthermore, all defendants are afforded protection against frivolous and fraudulent suits by the rules of civil procedure. *We question the argument that, as a class, cities require the further advantages of notice of claim statutes.*

*Id.* (emphasis added).

The Judgment is affirmed.