Hugh **BRYAN**, Plaintiff–Appellant,

Ruth Bryan, Plaintiff,

v.

Joseph W. **PEPPERS**, and State Farm Mutual Automobile Insurance Company, Defendants–Respondents.

No. 26338.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 8, 2005.

Steven E. Marsh, Springfield, MO, for Appellant.

Paul D. Link, Kristoffer R. Barefield, Springfield, MO, for Respondent Joseph W. Peppers.

Monte Paul Clithero, Springfield, MO, for Respondent State Farm Mutual Automobile Insurance Company.

No brief filed by this respondent.

JEFFREY W. BATES, Chief Judge.

Hugh Bryan ("Bryan") appeals from a judgment entered after a jury trial on his tort claim against Joseph Peppers ("Peppers"). Bryan sustained personal injuries when his truck was rear-ended by Peppers' vehicle. This collision also gave rise to an uninsured motorist ("UM") contract claim by Bryan against his insurer, State Farm Mutual Automobile Insurance Co. ("State Farm"). Bryan sought UM benefits from State Farm because a phantom driver allegedly precipitated the automobile accident by stopping suddenly and without warning on the highway ahead of Bryan and Peppers. The trial court severed the UM contract claim and ordered that it be tried after Bryan's tort claim against Peppers. During the tort trial, Peppers' lawyer made a comment in opening statement suggesting that Bryan could identify the alleged phantom driver and that this driver probably contributed to cause the collision. Bryan's request for a mistrial was overruled. The jury ultimately found in favor of Bryan, but he was awarded only $1,720.32 for his injuries. On appeal, Bryan contends, *inter alia,* that the trial court erred in severing the UM claim and in failing to grant a mistrial after Peppers' lawyer injected the issue of the phantom driver's fault during opening statement. Because we find both errors in combination caused substantial prejudice to Bryan, we reverse and remand for a new trial on all issues.

## I. Facts and Procedural History

On April 13, 1997, Bryan was driving his truck on Highway 65 south of Branson, Missouri. The road was straight and flat with clear visibility ahead. Bryan brought his truck to a stop because the cars in front of him were not moving. Bryan heard something behind him and looked into his rear-view mirror. He saw Peppers' truck, which had a U–Haul trailer attached to it, approaching "too fast and smoke coming out from underneath the tires where they were obviously trying to stop." Peppers' truck struck the rear end of Bryan's truck at approximately 8 to 10 miles per hour. Bryan was jolted by the impact, but he did not believe he had been hurt very badly at that time. Bryan got out of his truck and came back to check on the condition of Peppers and his two children, who were passengers in Peppers' vehicle. None of them were injured. After Bryan and Peppers talked for a few minutes and exchanged information, they both left the scene of the collision.

The first night after the accident, Bryan began having pain in his right elbow. The muscle relaxers he was prescribed for this injury reduced, but did not entirely eliminate, his right elbow pain. A few months later, he began to experience tingling and numbness in his right hand. In April 1999, Bryan was evaluated by Dr. Tom Briggs, a neurosurgeon. After conducting a number of tests, Dr. Briggs concluded Bryan's symptoms were caused by a spinal cord contusion he suffered during the collision. In June 1999, Dr. Briggs recommended that Bryan undergo neck surgery to improve the function of his right hand and prevent further deterioration of his condition. In June 2000, Bryan had a diskectomy and surgical fusion of the C5–C7 vertebrae in his neck, which cured the pain in his elbow and the numbness in his hand. Bryan incurred approximately $33,000 in medical bills for treatment received after the accident.

In April 2001, Bryan and his wife filed a lawsuit against Peppers and State Farm

asserting a tort claim and a contract claim, respectively, against the defendants. In Bryan's tort claim, he alleged that he sustained personal injuries and property damage when Peppers negligently collided with the rear end of Bryan's truck.[1] In Bryan's contract claim, he sought to recover UM benefits from State Farm. Bryan alleged that State Farm provided UM coverage because an unknown motorist, meeting the policy's definition of a "phantom" driver, negligently made a sudden and unexpected stop or turn on Highway 65 and thereby caused the collision which injured Bryan. In Peppers' answer, he denied causing the collision and asserted comparative fault on the part of Bryan. In State Farm's answer, it alleged that the collision was solely Peppers' fault and that Bryan breached certain policy provisions that required him to report a claim involving a phantom driver.

In November 2001, Peppers filed a motion to sever the tort claim against him for a separate trial. The motion alleged that trying the tort and contract claims together "would irretrievably litter the entire trial with matters of insurance," and "any evidence, remark or arguments by [Bryan] which might tend to inflame the jury with respect to [the UM counts] would substantially prejudice Peppers with regard to the wholly separate and distinct tort claims against him." In December 2001, the trial court granted the motion to sever and ordered that Bryan's tort claim against Peppers be tried first. The court did not state the grounds for its ruling.

In February 2004, Bryan's tort claim went to trial. In Bryan's opening statement, his attorney did not mention the phantom driver at all; he merely told the jury that Bryan had "come up on a line of

cars that'd stopped in traffic" and was "waiting for the traffic up ahead to clear." In Peppers' opening statement, his attorney told the jury that Peppers noticed that Bryan's truck was stopped "and that there's cars in front of him stopped, evidently, because someone is making a left-hand turn across the highway." After discussing Bryan's injuries and medical treatment for some time, Peppers' counsel returned to the topic of how the accident occurred. He characterized it as a minor, low-speed collision that caused little damage to the vehicles and then made the following statement:

> Another interesting tidbit, it was—when [Bryan] comes back and checks on my guy, on Mr. Peppers, he comes back and says—hands him a piece of paper with a license plate number on it. Tells Mr. Peppers that that car that was making that turn up in front, they've probably contributed to this accident and—

Bryan's counsel immediately objected and asked for a bench conference. He moved for a mistrial because this statement "gets back to the State Farm aspect, the uninsured motorist thing, and that was something I thought had been made clear that we weren't going to go into, going into this case." Peppers' counsel denied that his statement referred to the uninsured motorist claim or the phantom motorist. Bryan's counsel argued that a mistrial was required because the jury would not be able to disregard a statement, attributed to Bryan, that "here's the license number of the fellow that I believe—I believe contributed or caused this accident. . . ." In considering the request for a mistrial, the court stated that "my memory was that there was something about the license number of the left-turning car that you

<hr/>

1. Bryan's wife was included as a plaintiff because she was thought to be a co-owner of the damaged truck. When it was later discov-

ered that Bryan was the sole owner of the truck, his wife was dismissed from the case.

had alluded to, [Bryan's counsel], this left-turning car, and I didn't hear anything about who caused the accident." After further colloquy, Peppers' counsel then stated, "I didn't mention the left-turning car. I mentioned that he was stopped for the—a line of cars, anyway...."[2] The court denied the motion for mistrial and ordered Peppers' counsel to "get off this subject."

When the case was submitted to the jury, causation and the amount of damages were the only disputed issues. There was no contention that Bryan was at fault, and Peppers' counsel conceded in closing argument that his client had been negligent. The jury returned a verdict in favor of Bryan and awarded him $1,720.32 for his personal injuries and $1,250 for property damage. The trial court entered a judgment in Bryan's favor against Peppers and expressly determined that there was no just reason for delay.

This appeal followed. Bryan contends the trial court erred in: (1) severing the UM claim; (2) denying his motion for mistrial; (3) denying his motion for a new trial on damages; and (4) denying his motion for additur. Because we find Bryan's first and second points to be dispositive, we address only these issues. Given the interrelated nature of the two points, we review them together.

## II. Analysis

Preliminarily, we must address our jurisdiction to decide this appeal. As a general rule, a judgment is not final for purposes of appeal unless it disposes of all parties and all issues in the case and leaves nothing for future determination. *American Family Mut. Ins. Co. v. Lindley*, 112 S.W.3d 449, 451 (Mo.App.2003). Bryan's petition asserted a tort claim against Peppers and a contract claim against State Farm. The trial court's judgment only resolves Bryan's tort claim against Peppers. The severance of Bryan's contract claim against State Farm for later resolution did not constitute an "adjudication" of the claim so as to make the judgment against Peppers alone final for purposes of appeal. *See Colton, McMichael, Lester, Auman, Visnovske, Inc. v. Mueller*, 877 S.W.2d 702, 703–04 (Mo.App.1994).

An exception to the general rule that a judgment must dispose of all claims and all parties to be appealable, however, is found in Rule 74.01(b).[3] *City of Kansas City v. Woodson*, 130 S.W.3d 7, 10 (Mo.App.2004). When more than one claim is presented or multiple parties are involved, Rule 74.01(b) authorizes a trial court to "enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." So long as the judgment disposes of a distinct judicial unit (i.e., one complete claim as to one party) and the trial court expressly determines there is no just reason for delay, the judgment is final for purposes of appeal. *Precision Investments, L.L.C. v. Cornerstone Propane, L.P.*, 119 S.W.3d 611, 614 (Mo.App.2003); *Moreland v. Farren-Davis*, 995 S.W.2d 512, 516 (Mo.App.1999). Here, the judgment completely disposed of Bryan's tort claim against Peppers, and the trial court expressly determined there

---

**2.** We do not question the good faith of the judge and Peppers' counsel in trying to remember and describe, on the spur of the moment and without the benefit of a transcript, what the parties' counsel had said in their opening statements. Nevertheless, our review of the record demonstrates that neither the trial court nor Peppers' counsel accurately summarized what had been said.

**3.** All references to rules are to the Missouri Court Rules (2005).

was no just reason for delay. Accordingly, we have jurisdiction over Bryan's appeal. *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995); *Sisk v. Union Pacific Ry. Co.*, 138 S.W.3d 799, 806 (Mo.App.2004).

■ In Bryan's first point on appeal, he contends the trial court erred in ordering the severance and separate trial of the UM claim against State Farm. We review this ruling for an abuse of discretion. *Collins v. Hertenstein*, 90 S.W.3d 87, 106 (Mo. App.2002); *Guess v. Escobar*, 26 S.W.3d 235, 239 (Mo.App.2000). A trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002). Bryan argues the trial court abused its discretion because a severance of the UM claim was not warranted for any of the reasons set forth in Rule 66.02 and he was prejudiced by the ruling. We agree.

■ We begin by noting that "[t]he policy of the law is to try all issues arising out of the same occurrence or series of occurrences together." *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 395 (Mo. banc 1987); *Collins*, 90 S.W.3d at 106–07; *Guess*, 26 S.W.3d at 239; *see also* Rule 66.01(b) (allowing consolidation of civil actions involving common questions of law or fact). Rule 52.05, which governs who may be joined as defendants in one action, is consistent with this important policy. In pertinent part, this rule states as follows:

All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Rule 52.05(a). In the case at bar, Bryan's claims against Peppers and State Farm arose out of the same occurrence: the automobile collision that injured Bryan. His petition alleged that the personal injuries he suffered in this collision were caused by the combined negligence of Peppers and an unknown, uninsured motorist.[4] Bryan's claim against Peppers sounds in tort. *Automobile Club Inter-Insurance Exchange v. Farmers Ins. Co., Inc.*, 646 S.W.2d 838, 840 (Mo.App.1982). Bryan's claim against State Farm sounds in contract. *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 136 (Mo. App.2000); *Hollis v. Blevins*, 927 S.W.2d 558, 568 (Mo.App.1996). The joinder of a tort claim and a contractual UM claim arising out of the same automobile collision is authorized by Rule 52.05(a).[5] *See*

4. It is not necessary for Bryan to identify and successfully sue the unknown motorist in order to recover UM benefits from State Farm. *See Hollis v. Blevins*, 927 S.W.2d 558, 568 (Mo.App.1996) (recognizing that an insured has no obligation to assert a tort claim against the uninsured motorist/tort-feasor prior to filing suit against the insured's own UM carrier); § 379.203.1 RSMo (2000) (stating that legal entitlement to recover damages from an uninsured motorist exists even though that motorist's identity cannot be established and whether or not there was physical contact between the uninsured motor vehicle and the insured's motor vehicle).

5. Although a UM claim is classified as a contract action, tort principles also play an important role in successfully pursing such a claim. *See State ex rel. Smith v. Gray*, 979 S.W.2d 190, 193 (Mo. banc 1998) (to obtain UM benefits, an insured must prove a con-

*State ex rel. Farmers Ins. Co., Inc. v. Murphy,* 518 S.W.2d 655, 662 (Mo. banc 1975) (approving the joinder of such claims in a single lawsuit). In *Murphy,* our Supreme Court noted that its interpretation of Rule 52.05(a) "is in harmony with the philosophy of permissive joinder which is to promote judicial economy, expedite final disposition of litigation and prevent inconsistent results due to multiple separate lawsuits. Any situation wherein it would be unwise or unfair to try all claims asserted at the same time can be handled pursuant to Rule 66.02." *Id.*

Since *Murphy* was decided, it does not appear that any Missouri appellate court has addressed the issue of exactly what circumstances make it unwise or unfair to try tort and UM claims arising out of a single automobile collision together. The parties have cited no such authority, and we have found none in our independent research.[6] To determine whether the trial court's order granting separate trials of the tort and UM claims can be sustained, we must examine the text of Rule 66.02. It states:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

Thus, a trial court may, in its discretion, order separate trials "for reasons of convenience, to avoid prejudice or for reasons of judicial economy." *Shady Valley Park & Pool, Inc. v. Fred Weber, Inc.,* 913 S.W.2d 28, 36 (Mo.App.1995).

In the case at bar, the trial judge did not explain why he ordered separate trials of the tort claim against Peppers and the UM claim against State Farm. Certainly, the court's decision cannot be upheld on the grounds that it promoted convenience or judicial economy. As noted above, Bryan's petition alleged that the injuries he suffered in the automobile collision were caused by the combined negligence of Peppers and an unidentified, uninsured motorist.[7] In order to recover from Peppers, Bryan would have to prove Peppers' negligence, causation and damages. *See, e.g.,* MAI 17.16 [1973 Revision] (submitting rear-end collision). In order to recover from State Farm, Bryan would have to prove the uninsured status of the unidentified motorist, his or her negligence, causation and damages. *See* MAI 31.11 [1996 Revision] (the verdict-director submitted against a UM insurer when the uninsured motorist has not been joined as a defendant). Since the liability of Peppers and

tractual basis for recovery and causal negligence on the part of the uninsured motorist); MAI 31.10 ("[u]ninsured motorist insurance cases combine tort liability and contract liability into one action").

6. It is possible, however, to find examples of cases in which tort claims against individual motorist/defendants and a contract claim against a UM carrier, based on the conduct of an unidentified uninsured motorist, have been successfully tried together. *See, e.g., Gaunt v. State Farm Mut. Ins. Co.,* 24 S.W.3d 130, 133 (Mo.App.2000); *Hollis v. Blevins,* 927 S.W.2d 558, 561 (Mo.App.1996).

7. Assuming Bryan could prove the aforementioned allegations, Peppers and the unidentified motorist would be joint tort-feasors because their independent acts coalesced to cause a single, indivisible injury to Bryan. *See State ex rel. Smith v. Gray,* 979 S.W.2d 190, 193 (Mo. banc 1998); *Bryant v. Frank,* 765 S.W.2d 731, 733–34 (Mo.App.1989); *Automobile Club Inter–Insurance Exchange v. Farmers Ins. Co., Inc.,* 646 S.W.2d 838, 840 (Mo.App.1982).

the unidentified motorist arises from a single collision, the evidence necessary to sustain each liability claim is virtually the same. The lay and medical testimony bearing on causation and establishing the nature and extent of Bryan's damages is identical because the jury would use MAI 4.01 [2002 Revision] to determine damages on both the tort and UM claims. *See* MAI 31.10 [1978 Revision]. As MAI 31.10 [1978 Revision] explains, "[i]t is the function of the jury to assess the plaintiff's damages and the [uninsured motorist] tort-feasor is liable for the total amount. Use MAI 4.01 or other applicable damage instruction. When the insurance company is found liable, the amount of the judgment against it is a matter of law to be determined by the court." Bearing in mind that Peppers blamed the collision solely on the conduct of the unidentified motorist and State Farm blamed the collision solely on Peppers, the order to sever the two claims was very inconvenient to Bryan and failed to promote judicial economy. First, severance created the risk that the verdicts on liability and/or damages in the two trials would be inconsistent. Second, severance put Bryan to the additional difficulty and expense of trying the same basic case two times. Third, severance would inevitably cause considerable delay in finally resolving Bryan's claims against Peppers and State Farm. Thus, the trial court's severance order actually created the very ill effects our Supreme Court sought to eliminate by allowing the joinder of tort and UM claims in the first instance. *See Murphy,* 518 S.W.2d at 662.

In the court below, Peppers' only reason for requesting a severance was to avoid prejudice. He claimed that a joint trial of the tort claim and the UM claim would inject the existence of *his* liability insurance into the case and that the mere mention of the UM claim would cause him substantial prejudice. Since the trial court gave no explanation for its ruling, we presume the court based its decision on the grounds presented in Peppers' motion. *See Johnson v. Brown,* 154 S.W.3d 448, 450–51 (Mo.App.2005); *Meekins v. St. John's Regional Health Center, Inc.,* 149 S.W.3d 525, 529 (Mo.App.2004). We find Peppers' arguments untenable.

First, Peppers contends that trying the tort claim against him at the same time as the UM claim would have injected the existence of his liability insurance into the case. To support this argument, Peppers cites *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780 (Mo. banc 1977), for the proposition that "the improper injection in a jury tried case that the defendant was covered by liability insurance constitutes error...." *Id.* at 787. Frankly, we are unable to understand how this precedent aids Peppers because he concedes that the jury would not have been informed that he had liability insurance; rather, "being forced to sit at the defense table with State Farm would have the same prejudicial effect." We are not persuaded that a jury would infer Peppers had liability insurance simply because of his status as an individual defendant in a case in which Bryan was asserting a separate UM claim against his own insurance company. Since 1986, the maintenance of financial responsibility has been mandatory for the owners and operators of vehicles registered, or required to be registered, in this state. § 303.025 RSMo Cum.Supp. (2004). "Most owners and operators of vehicles undertake to satisfy the requirement by purchasing a motor vehicle liability policy." *First Nat. Ins. Co. of America v. Clark,* 899 S.W.2d 520, 522 (Mo. banc 1995); *see also* § 303.190 RSMo (2000). Therefore, we presume jurors know that most owners and operators of motor vehicles have liability insurance coverage, particularly since proof of insurance must be furnished to

register a vehicle. *See* § 303.026.2 RSMo (2000). It seems highly unlikely, however, that a jury composed of laymen would possess the high level of legal knowledge necessary to understand why it is permissible for a plaintiff to sue his insurance company directly when bringing a first-party claim, but it is impermissible to sue a liability insurer directly when bringing a third-party claim. *See, e.g., Duncan v. Andrew County Mut. Ins. Co.,* 665 S.W.2d 13, 19 (Mo.App.1983) (recognizing that an insured may sue his insurer directly on a first-party claim because "the parties occupy a contractually adversary or creditor-debtor status as opposed to standing in a fiduciary relationship"); *State Farm Mut. Auto. Ins. Co. v. Allen,* 744 S.W.2d 782, 785–86 (Mo. banc 1988) (tort claimants must sue tort-feasor and cannot bring a direct action against his or her liability insurer); *Desmond v. American Ins. Co.,* 786 S.W.2d 144, 145 (Mo.App.1989) (the general rule is that an injured party cannot proceed in a direct action against an insurance company providing liability coverage for an insured who allegedly caused the harm sustained by the claimant). Absent such a sophisticated level of understanding, the fact that Bryan sued Peppers individually, rather than bringing a direct action against an insurance company providing liability coverage to him, would more likely lead the jurors to infer that Peppers had no insurance.

Second, Peppers contends that the mere mention of the UM claim at his trial would cause him substantial prejudice. We reject the notion that having an insurance company as a co-defendant is so inherently prejudicial that an individual defendant in the same case is entitled to a separate trial. If the identity of the uninsured motorist who allegedly precipitated this collision had been known, Bryan could have joined that person as an individual defendant in this action, along with State Farm.[8] *See, e.g., Peltzman v. Beachner,* 900 S.W.2d 677, 679 (Mo.App.1995). The uninsured motorist would be liable to Bryan for the full measure of damages, while State Farm would only be liable up to the limits of its UM policy. *Id.* The jury deciding the case would assess total damages, for which the uninsured motorist would be personally liable, without the jury ever knowing how much of that sum might be paid by State Farm's policy. *Gaunt,* 24 S.W.3d at 137; MAI 31.10 [1978 Revision]; MAI 36.13 [1980 Revision]. As the notes on use for MAI 36.13 explain:

> The jury verdict does not determine the amount of the judgment against the uninsured motorist insurance carrier. If the jury verdict is against both the uninsured motor vehicle operator and the insurance company, the court should enter a judgment against the operator in the amount of the jury verdict against him and enter a judgment against the insurance company in an amount in accordance with the policy limits and the verdict.

We believe this prescribed mode of trying claims against an uninsured motorist and a UM carrier in one action refutes Peppers' assertion that having a UM insurer as a co-defendant is somehow so inherently prejudicial to an individual defendant that he or she is entitled to a separate trial.

We conclude that the trial court's decision to sever Bryan's UM claim for a separate trial was an abuse of discretion. The ruling was not authorized for any reason set forth in Rule 66.02, and it was clearly contrary to the logic of the circum-

---

**8.** Alternatively, State Farm might have been able to force the joinder of the uninsured motorist if the terms of its policy so provided.

*See State ex rel. MFA Ins. Co. v. Murphy,* 606 S.W.2d 661, 662 (Mo. banc 1980).

stances. In our view, the trial court's decision to sever Bryan's UM claim did not reflect a careful consideration of the issue and was, therefore, arbitrary and unreasonable. Furthermore, the ruling caused substantial prejudice to Bryan for the reasons previously discussed. Bryan's first point is granted.

 Bryan's second point asserts trial court error in denying his request for a mistrial. We review the trial court's ruling for abuse of discretion. *Harmon v. Hamilton,* 903 S.W.2d 610, 615 (Mo.App. 1995). Peppers persuaded the trial court that a severance of Bryan's UM claim was required, in part, because the tort claim against Peppers was so wholly separate and distinct that any discussion of the UM claim would cause him substantial prejudice. After obtaining a severance on that basis, Peppers' counsel directly injected the issue of the uninsured motorist's responsibility for the collision into the tort trial. Counsel's comment suggested Bryan could identify the motorist who had probably caused the collision to occur. We believe the jurors could have interpreted this remark to mean that Bryan either had, or would, make a claim against that driver similar to the one being asserted against Peppers. Bryan's counsel immediately moved for a mistrial. It appears this request was denied because the trial court and Peppers' counsel were laboring under a misapprehension about what had been said in opening statement and by whom. The trial court's comments during the bench conference demonstrate its ruling was influenced by an incorrect belief that Bryan's counsel somehow broached this topic in his own opening statement.

In sum, Peppers was granted a severance, at least in part, because he claimed that any remark about the UM claim during the trial of the tort claim would cause substantial prejudice to him. After obtaining the requested severance on that basis, Peppers' counsel then voluntarily, bluntly injected the issue of the uninsured motorist's fault into the tort trial via his opening statement comment. If a remark by Bryan concerning the severed UM claim would be substantially prejudicial to Peppers, why would Bryan not be equally prejudiced by Peppers' comment? Under these unusual circumstances, it was an abuse of discretion for the trial judge to deny Bryan's request for a mistrial. The court's contrary ruling was unreasonable and so clearly against the logic of the circumstances that it reflects a lack of careful consideration of the issue.

Peppers argues that Bryan was not prejudiced by the remark because the small verdict demonstrates the jury did not believe that all of the damages claimed by Bryan were directly caused by the collision. We do not know why the jurors reached the verdict they did. The argument advanced by Peppers is one possible explanation, but so is Bryan's competing argument that the verdict resulted from the suggestion that he either had, or would, pursue additional claims for the same damages against another party. Bryan's second point is granted.[9]

The trial court's judgment is reversed, and the case is remanded for a new trial on all issues.

SHRUM, P.J., and BARNEY, J., Concur.

---

9. While we would be very reluctant to reverse the trial court's judgment based on this error alone, the errors identified in Bryan's first and second points, considered together, require a reversal and remand for a new trial.