**STATE ex rel. Stephanie SASNETT, Maris Sasnett, Bryan Sasnett, and Mandy Vierthaler, Relators,**

v.

**Honorable Kelly MOORHOUSE, Judge, Div. 9, Circuit Court of Jackson County, Missouri, Respondent.**

No. WD 69323.

Missouri Court of Appeals, Western District.

Aug. 5, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 30, 2008.

Application for Transfer Denied Nov. 25, 2008.

Wm. Dirk Vandever, Kansas City, MO, for Relators.

Galen Beaufort, Douglas McMillan, EChad A. Stewart, Kansas City, MO, for City of Kansas City, MO.

Before PAUL SPINDEN, P.J., THOMAS NEWTON, C.J. and JOSEPH P. DANDURAND, JJ.

JOSEPH P. DANDURAND, Judge.

This is an original proceeding upon a petition seeking a writ of mandamus. Relators seek to reverse the dismissal of their wrongful death claim against the City of Kansas City. The preliminary writ of mandamus is made absolute.

### Facts

On December 21, 2005, Stephen Sasnett was killed in an automobile accident at the intersection of 18th and Charlotte in Kansas City, Missouri. The accident occurred when Tina Jons ran the red light controlling her course of travel. A vehicle driven by Ronald Brooks struck Ms. Jons's vehicle. Ms. Jons's vehicle became airborne and landed on Stephen Sasnett's vehicle, causing his death.

On June 23, 2006, the Kansas City Mayor's Office received from Counsel for Maria Sasnett, Stephanie Sasnett, Bryan Sasnett, and Mandy Vierthaler (the Sasnetts) [1] a written notice of claim for the accident in which Stephen Sasnett was killed. On

---

1. The Sasnetts are the spouse and children of Stephen Sasnett.

March 19, 2007, the Sasnetts filed their petition in Jackson County Circuit Court, naming as defendants Tina Jons, Ronald Brooks, and the City of Kansas City (the City). The claims against Ms. Jons and Mr. Brooks were for the negligent operation of their motor vehicles that caused the death of Stephen Sasnett. The claim against the City was for a dangerous condition of public property that caused the death of Stephen Sasnett. The Sasnetts alleged that the City allowed a dangerous condition to exist at the intersection where the accident occurred by not properly designing, locating, operating, and maintaining the traffic signal at that location.

The City filed a motion to dismiss on April 27, 2007. On September 6, 2007, Circuit Court Judge Kelly Moorhouse granted the City's Motion to Dismiss based on the lack of proper notice under Section 82.210. Judgment was entered accordingly on October 22, 2007. The case continued as to defendants Ms. Jons and Mr. Brooks.

On September 12, 2007, the Sasnetts filed a Notice of Appeal regarding the grant of dismissal. The appeal was dismissed on October 22, 2007, because the order was not a final, appealable order. The plaintiffs filed a motion for Judge Moorhouse to reconsider the dismissal on October 22, 2007. The motion was denied on December 10, 2007.

The Sasnetts filed a Petition for Writ of Mandamus, or in the Alternative, for Prohibition on February 5, 2008. The petition seeks a writ directing Judge Moorhouse to reverse the dismissal and reinstate the Sasnetts' wrongful death claim against the City. On March 3, 2008, this court issued an Order of Preliminary Writ of Mandamus.

### Standard of Review

A writ of mandamus compels the performance of "a ministerial duty that one charged with the duty has refused to perform." *State ex rel. McKee v. Riley,* 240 S.W.3d 720, 725 (Mo. banc 2007)(quote marks and citation omitted). "A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Id.* (quote marks and citation omitted). A court will only issue the writ if the "ministerial duty sought to be coerced is definite, arising under conditions admitted or proved and imposed by law." *State ex rel. Mo. Dep't of Soc. Servs., Div. of Med. Servs. v. Kramer,* 215 S.W.3d 739, 740 (Mo.App. E.D.2007)(quote marks and citation omitted). A writ of mandamus is issued "to prevent the exercise of powers exceeding judicial jurisdiction." *Id.* "The writ is used both to compel a court to do what is required by law and to undo what is prohibited by law." *Id.*

"A writ of prohibition does not issue as a matter of right." *State ex rel. Rosenberg v. Jarrett,* 233 S.W.3d 757, 760 (Mo.App. W.D.2007). "Rather, it is discretionary and will lie only to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power." *Id.* (quote marks and citation omitted). "A writ of prohibition is an extraordinary remedy that is to be used with great caution and forbearance and only in cases of extreme necessity." *Id.* (quote marks and citation omitted). Writs of prohibition are appropriate in three scenarios: "to prevent the trial court from usurping judicial power when it lacks the requisite jurisdiction, to remedy an excess of jurisdiction or abuse of discretion when the lower court lacks the power to act, and to prevent a party from suffering irreparable harm." *State ex rel. Brantingham v. Grate,* 205 S.W.3d 317, 319 (Mo.App. W.D.2006). "A writ of prohibition is appropriate if it is

necessary to preserve 'the orderly and economical administration of justice'....." *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner,* 239 S.W.3d 608, 610 (Mo. banc 2007) (citation omitted).

## Analysis

The trial court dismissed the Sasnetts' claim against the City after finding that the Sasnetts failed to give the City notice as required by Section 82.210. That statutory provision states:

> No action shall be maintained against any city of this state which now has or may hereafter attain a population of one hundred thousand inhabitants, on account of any injuries growing out of any defect in the condition of any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city.

§ 82.210, RSMo 2000. No party disputes that the City has a population of one hundred thousand inhabitants.

The trial court held that the Sasnetts were required to give notice pursuant to section 82.210. This holding was incorrect for three reasons.

**First, section 82.210 does not apply to the Sasnetts' claim where the claim is not of a defect in the condition of a street.**

In *Williams v. Kansas City,* 782 S.W.2d 64 (Mo. banc 1990), the plaintiff alleged that the steps at Kansas City International Airport were in a defective condition. The issue was whether the plaintiff was required to give the City notice pursuant to section 82.210. *Id.* at 64–65. The court held that section 82.210 applied to "all of those publicly maintained exterior improvements designed to facilitate travel for which the common law permitted liability because of their proprietary nature." *Id.* at 65. It concluded: "The steps are part of the sidewalk; they are in the sidewalk." *Id.*

In *Banks v. City of Kansas City,* 862 S.W.2d 485 (Mo.App. W.D.1993), the plaintiff alleged she was injured while crossing a crosswalk which was dark and dangerous because the street lights were placed a distance from the crosswalk. The issue was again whether the plaintiff was required to give the City notice pursuant to section 82.210. *Id.* at 487. The court, citing *Williams,* held that negligently designed lighting system was contemplated within the meaning of "any defect in the condition of any ... street, sidewalk, or thoroughfare" as provided for in section 82.210. *Id.*

In *Jones v. Kansas City,* 15 S.W.3d 736 (Mo. banc 2000), the plaintiff was injured in an accident he claimed was caused by the City's failure to have a stop sign at an intersection instead of a yield sign. The issue was whether the allegedly defective sign was covered by section 82.210 as a "defect in the condition" of a street. *Id.* at 737. The court noted that section 82.210 "provides a list of properties owned by the city: bridge, boulevard, street, sidewalk, thoroughfare." *Id.* It discounted reliance on *Williams,* stating: *"Williams,* however, does not invite us to expand the list of properties to include a yield sign as an 'exterior improvement designed to facilitate travel.'" *Id.* (citation omitted). Instead, *Williams* "intended merely to summarize the category of properties that consist of bridges, boulevards, streets, sidewalks, and thoroughfares." *Id.* It

went on: "Each of this group of terms is a structure that facilitates travel and upon which travel occurs by vehicle (bridge, boulevard, street, or thoroughfare) or on foot (sidewalk)." *Id.* The court also noted the *Banks* decision and stated:

No transfer application was filed with this Court in *Banks* after the court of appeals decision. *Banks* should not be read to expand the list of properties to which the notice statute applies. To the extent there is language inconsistent with this principle in *Banks,* it should not be followed. *Banks* quite sensibly can be confined to its conclusion that an allegation of a dark and dangerous crosswalk encompasses a defect in the condition of a street and is, thus, within the meaning of section 82.210.

*Id.* at 738 n. 3. The court concluded that the yield sign was not part of a "bridge, boulevard, street, sidewalk, or thoroughfare" within the meaning of section 82.210. *Id.* at 738. It stated: "We could, of course, construe the word 'street' to include everything owned by the city in and around the street having to do with the regulation of traffic on the street, but we are constrained by precedent to give a narrow reading of the statutory terms, not an expansive one." *Id.* Finally, the court noted there is a difference between road design, which encompasses the concept of installing lights and traffic controls, and road condition. *Id.* at n. 4. It noted that section 82.210 involves a "much narrower subject—the actually defective *condition* of city bridges, boulevards, streets, sidewalks, and thoroughfares." *Id.*

The City argues that *Jones* is distinguishable because the yield sign was in grass near the street; this argument ignores the clarification and guidelines provided in *Jones* as to the holdings in *Banks* and *Williams.* Consistent with *Jones,* the Sasnetts were not required to provide no-

tice pursuant to section 82.210. Their claim is that the intersection was dangerous because of the traffic signals, which are not a structure upon which travel occurs. They do not complain about the condition of the street; the traffic signals were not a part of the street.

## Second, the Sasnetts were not required to give notice because section 82.210 does not apply to actions for wrongful death.

In *Glasgow v. City of St. Joseph,* 353 Mo. 740, 184 S.W.2d 412 (1944), the Missouri Supreme Court held that the predecessor to section 82.210 did not apply to actions for wrongful death. In *Hewitt v. City of Kansas City,* 761 S.W.2d 679 (Mo. App. W.D.1988), this court stated that *Glasgow* interpreted a predecessor to section 82.210 and held that "notice was not required in an action for wrongful death." *Id.* at 684. It further observed that, despite prompting by the courts, the legislature had not further defined the scope of the notice requirement as it applies to wrongful death. *Id.* Thus, *Glasgow* is still good authority. The Sasnetts' claim for wrongful death is not governed by section 82.210.

The City notes a case for wrongful death in 1920 wherein the plaintiff gave the city notice. Notice is not required by statute merely because some prior plaintiffs have provided it. The City also relies on section 537.085, which states that a wrongful death defendant may use any defense against the plaintiffs that could have been used against the deceased. As noted, *Glasgow* is directly on point and is still binding. The City's argument is unavailing.

## Third, Stephanie Sasnett's status as a minor tolled the notice requirements of section 82.210 as to her.

Stephanie Sasnett is a minor plaintiff; she is a plaintiff by and through

her Guardian. In *Schumer v. City of Per-ryville,* 667 S.W.2d 414 (Mo. banc 1984), the Missouri Supreme Court held that legal incapacity excuses the failure to give notice under section 79.480. *Id.* at 418. The legal incapacity at issue was the plaintiff's minority. *Id.* The court went on to state that the failure of the court appointed next friend to give timely notice did not change the analysis. *Id.* The appointment of a next friend does not extinguish the minority disability. *Id.* Section 79.480 is virtually identical to section 82.210. The two statutes differ in that section 82.210 applies to cities with a population of more than one hundred thousand and section 79.480 applies to fourth class cities. §§ 82.210; 79.480. The analysis in *Schumer* applies also to the case *sub judice.* Thus, assuming *arguendo* that section 82.210 does apply to the Sasnetts' claim, it was tolled as to Stephanie Sasnett because of her minority.

The City attempts to distinguish *Schumer* by noting that the minor was injured in *Schumer.* Stephanie Sasnett was also injured, and her wrongful death claim is derivative of the injuries she suffered as a result of the death of her father. The City's distinction is not compelling. The City also notes that the statute of limitations for wrongful death is not tolled for minority. The statute of limitations is not at issue in this proceeding; an entirely different statute is at issue.

### Other arguments are unpersuasive.

 The City argues that the Sasnetts should not receive the requested writ because of the equitable defenses of unclean hands and laches. " '[E]quity will not aid a party who comes into court with unclean hands ... Such conduct as will disqualify a party from equitable relief need not be fraudulent, but simply indicative of a lack of good faith in the subject matter of the suit.' " *State ex rel. KelCor, Inc. v. Nooney Realty Trust, Inc.,* 966 S.W.2d 399, 404 (Mo.App. E.D.1998)(quoting *Hardesty v. Mr. Cribbin's Old House, Inc.,* 679 S.W.2d 343, 348 (Mo.App.1984)). "The invocation of laches requires that a party with the knowledge of facts giving rise to its rights unreasonably delays asserting them for an excessive period of time and the other party suffers legal detriment therefrom." *Scheble v. Mo. Clean Water Comm'n,* 734 S.W.2d 541, 560 (Mo. App. E.D.1987). "In determining whether to apply the doctrine of laches, [courts] examine the length of delay, the reasons therefor, how the delay affected the other party, and the overall fairness in permitting the assertion of the claim." *Id.*

There is no evidence that the Sasnetts have acted in bad faith. The City suggests bad faith may be inferred by the fact that the Sasnetts actually gave written notice outside of the 90 day time frame. That the Sasnetts gave untimely notice does not mean the notice given was required statutorily. *See, e.g., Schumer,* 667 S.W.2d at 418 (that the plaintiffs gave notice outside the 90 day timeframe did not impact the conclusion that notice was not statutorily required).

There is also no evidence that the Sasnetts unreasonably delayed in seeking this writ. The Sasnetts' claim was dismissed in September 2007. Their appeal was filed and dismissed. They filed a motion for reconsideration in October 2007. That motion was denied in December 2007. They filed the motion for this writ in February 2008. This was not an unreasonable delay.

Moreover, the City has not demonstrated it suffered any legal prejudice. While it alleges harm, it does not support its assertion with citations to the record or specific details. It claims it would be at a disadvantage because discovery continued

after its dismissal from the case. These bare assertions do not establish prejudice.

■ The City further argues that a writ is inappropriate in this case because the Sasnetts have an appropriate legal remedy. It asserts that the Sasnetts should wait until the claims against Ms. Jons and Mr. Brooks have been resolved and then appeal the dismissal of claims against the City. Similarly, the City claims that the Sasnetts already appealed the dismissal and that their appeal was dismissed for lack of jurisdiction. It claims nothing has changed to confer jurisdiction and that the Sasnetts are attempting to appeal the same order twice. It states in its brief: "The Sasnetts cannot use mandamus as an alternate route to the Court of Appeals to circumvent the jurisdictional requirement that a final and appealable judgment disposing of all claims and issues must be entered before an appeal may be taken. The Sasnetts may appeal once the Trial Court enters a judgment that disposes of all parties and issues."

■ "Mandamus is an extraordinary remedy normally unavailable if there is another plain, speedy and adequate remedy at law." *State ex rel. Nesbit v. Lasky,* 546 S.W.2d 51, 52–53 (Mo.App.1977)(holding that "the mere fact that an appeal is pending does not preempt mandamus"). "The other remedy must be equally adequate and efficient." *Id.* at 53.

In *State ex rel. Ashcroft v. Whipple,* 647 S.W.2d 596 (Mo.App. S.D.1983), the relators sought a writ of prohibition preventing the trial judge from dismissing certain defendants from a civil action. In analyzing whether a writ was appropriate, the court noted that the relators could not "obtain prompt review" of the order dismissing certain defendants through an appeal "because the order will not dispose of all issues between all parties, and no appeal lies from such an order unless it is designated final for purposes of appeal." *Id.* at 599. It further noted that review by appeal would have to await final judgment by the trial court on the claims against the remaining defendants. *Id.* It concluded that appeal was not an adequate remedy, and a writ was appropriate if the order dismissing certain defendants was contrary to law. *Id.* at 599–600.

In *State ex rel. Reis v. Nangle,* 349 S.W.2d 508, 512–13 (Mo.App.1961), the trial court refused to hear certain claims pertaining to probate proceedings. The relator sought a writ of mandamus requiring the trial court to hear all the claims. The respondent argued that the relator had an adequate remedy at law in that a separate proceeding could be had on the omitted claims if their omission was later determined to be error. *Id.* at 512. The court noted that if it determined there was an adequate remedy at law, "the circuit court would hear and determine only a part of what it should" and the relator would be subjected to another trial where the new claims would be heard along with evidence on the still pending claims given the interdependence of the claims. *Id.* at 512–13. It determined mandamus was an appropriate remedy. *Id.* at 513.

In *Bryan v. Peppers,* 175 S.W.3d 714 (Mo.App. S.D.2005), the plaintiff filed a suit against a driver and insurance company for injuries arising out of an automobile accident. His claim against the insurance company was for injuries caused by an uninsured motorist who caused a traffic jam on the road, leading to the plaintiff being rear-ended by the named driver in the suit. *Id.* at 717. The insurance company maintained that the accident was solely the named driver's fault. *Id.* The court severed the two claims, ordering that the suit against the named driver occur first. *Id.* The court noted that in order for the plaintiff to recover from the

named driver, he would have to prove the driver's negligence, causation, and damages. *Id.* at 720. In order to recover from the insurance company, the plaintiff would have to "prove the uninsured status of the unidentified motorist, his or her negligence, causation and damages." *Id.* The court stated: "Since the liability of [the named driver] and the unidentified motorist arises from a single collision, the evidence necessary to sustain each liability claim is virtually the same." *Id.* at 720–21. The court held that severance was improper because it: (1) "created the risk that the verdicts on liability and/or damages in the two trials would be inconsistent;" (2) it put the plaintiff "to the additional difficulty and expense of trying the same basic case two times;" and (3) it "would inevitably cause considerable delay in finally resolving [the plaintiff's] claims against [the named driver] and [the insurance company]." *Id.* at 721.

*Waiting for the claims against Ms. Jons and Mr. Brooks to be settled is not an adequate remedy in the case sub judice.* It would require delay and ineffective use of judicial resources in that two trials would be had to resolve the issues pertaining to one accident. Further, it is probable that the Sasnetts would suffer prejudice and irreparable harm. Ms. Jons and Mr. Brooks will likely present as their defense that the accident was caused by the dangerous condition of the intersection. Similarly, the City will likely argue that the accident was caused by the actions of Ms. Jons and Mr. Brooks. Given the real possibility of prejudice and irreparable harm, a writ is appropriate as the dismissal of claims against the City was error.

Finally, this court joins prior courts in questioning whether notice of claim statutes are still necessary given that cities are now permitted to purchase liability insurance. *See, e.g., Williams,* 782 S.W.2d

at 67; *Hewitt,* 761 S.W.2d at 684. As stated in *Schumer,* 667 S.W.2d at 416 n. 3:

> Today, our cities are allowed to purchase liability insurance, they maintain modern police and fire departments to investigate accidents and take prompt remedial action, and furthermore, all defendants are afforded protection against frivolous and fraudulent suits by the rules of civil procedure. We question the argument that, as a class, cities require the further advantages of notice of claim statutes.

## Conclusion

The preliminary writ of mandamus is made absolute, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

SPINDEN, P.J. and NEWTON, C.J., concur.